UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICK SIMCO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AEGEAN MARINE PETROLEUM NETWORK INC., E. NIKOLAS TAVLARIOS and SPYROS GIANNIOTIS.<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Nick Simco ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Aegean Marine Petroleum Network Inc. ("Aegean" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Aegean common stock between April 28, 2016, and June 4, 2018, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

## PARTIES

5.      Plaintiff purchased Aegean common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

6.      Defendant Aegean is incorporated in The Republic of the Marshall Islands with its principal offices located at 10 Akti Kondili, 185 45 Piraeus, Greece. Aegean's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ANW."

7.      Defendant E. Nikolas Tavlarios ("Tavlarios") was the Company's Chief Executive Officer ("CEO") at all relevant times. Aegean listed Defendant Tavlarios' address at 299 Park Avenue, New York, New York 10171 as the Company Contact Person in all relevant SEC filings.

8.      Defendant, Spyros Gianniotis ("Gianniotis") was the Company's Chief Financial Officer ("CFO") until April 17, 2018.

9.      Defendants in paragraphs 7-8 are collectively referred to herein as the "Individual Defendants."

10.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

11.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Aegean's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers

and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

12.    As officers of a publicly held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Aegean's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

14.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Aegean common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Aegean's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Aegean securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

15.     Aegean is a marine fuel logistics company that markets and physically supplies refined marine fuel and lubricants to vessels in port, at sea, and on rivers. Aegean procures marine fuel from refineries, major oil producers, and other sources along with reselling and delivering these fuels from its bunkering vessels to end users.

### B.     Material Misstatements and Omissions during the Class Period

16.     The Class Period begins on April 28, 2016, when Aegean filed a Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2015 ("2015 20-F"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the year, the Company reported trade receivables of approximately $309 million, compared to trade receivables of approximately $354 million in the previous year. The 20-F stated in pertinent part:

*Trade Receivables and Allowance for Doubtful Accounts*

We extend credit on an unsecured basis to many of our customers. There is uncertainty over the level of collectability of customer accounts. ***Our management is responsible for approving credit limits above certain amounts, setting and maintaining credit standards, and managing the overall quality of our credit portfolio.*** We perform ongoing credit evaluations of our customers and adjust credit limits based upon payment history and the customer's current credit worthiness.

5

Accounts receivable are deemed past due based on contractual terms agreed with our customers.

We continuously monitor collections and payments from our customers and maintain a provision for estimated credit losses based upon our historical experience with our customers, current market and industry conditions of our customers and any specific customer collection issues that we have identified.

We transfer ownership of eligible trade accounts receivable to a third-party purchaser without recourse in exchange of cash. The factoring of trade accounts receivable under the agreement is accounted for as a sale. Proceeds from the transfer reflect the face value of the account less a discount. The receivables sold pursuant to this factoring agreement are excluded from trade accounts receivable on our consolidated balance sheets and are reflected as cash provided by operating activities on our consolidated statements of cash flows. We do not record a servicing asset or liability on our consolidated balance sheets because we estimate that the fee we receive is at fair value. Servicing fees are recorded in the interest and finance costs in the accompanying consolidated statements of income. We continue to service, administer and collect the receivables sold under this program. The third-party purchaser has no recourse to our assets for failure of debtors to pay when due.

Accounts and notes receivable are reduced by an allowance for amounts that may become uncollectible in the future. ***At the end of each reporting period, we calculate an allowance for doubtful accounts based on an aging schedule where we apply set percentages to categories of overdue trade receivables***. ***These set percentages are based on historical experience and currently available management information on customer accounts.*** Furthermore, we provide appropriate allowances for any specific customer collection issue we identify which allowance is calculated on a case-by-case basis. Trade receivables are written off when it becomes apparent based upon age or customer circumstances that such amounts will not be collected.

We believe the level of our allowance for doubtful accounts is reasonable based on our experience and our analysis of the net realizable value of our trade receivables during each reporting period. The estimates driving the calculation of our allowance for doubtful accounts have not changed in the past periods and we do not expect these estimates to change in the foreseeable future because they have resulted and we believe that they will continue to result in accurate calculations of our allowance for doubtful accounts. We cannot guarantee that we will continue to experience the same credit loss rates that we have experienced in the past, since adverse changes in the marine industry or changes in the liquidity or financial position of our customers could have a material adverse effect on the collectability of our trade receivables and our future operating results. If credit losses exceed established allowances, our results of operations and financial condition may be adversely affected.

6

\*      \*      \*

**AEGEAN MARINE PETROLEUM NETWORK INC.**
**CONSOLIDATED BALANCE SHEETS**
*(Expressed in thousands of U.S. dollars – except for share and per share data)*

|  | December 31, | |
| --- | --- | --- |
|  | **2015** | **2014** |
| **ASSETS** | | |
| **CURRENT ASSETS:** | | |
| Cash and cash equivalents | $139,314 | $129,551 |
| Trade receivables, net of allowance for doubtful accounts of $7,278 and $5,851 as of December 31, 2015 and 2014, respectively (Note 2 and 4) | 309,874 | 354,223 |
| Trade receivables from related companies (Note 5) | 18,963 | 12,689 |
| Due from related companies (Note 5) | 6,887 | 5,973 |
| Derivative asset (Note 16) | 22,416 | 18,941 |
| Inventories (Note 6) | 114,531 | 156,990 |
| Prepayments and other current assets, net of allowances for doubtful accounts of $565 and $0, as of December 31, 2015 and 2014, respectively (Note 7) | 116,004 | 54,901 |
| Deferred tax asset (Note 25) | 2,133 | 754 |
| Restricted cash (Note 2) | 828 | 2,306 |
| **Total current assets** | **730,950** | **736,328** |

Emphasis added.

17.     On May 16, 2017, Aegean filed a Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2016 ("2016 20-F"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the year, the Company reported trade receivables of approximately $503 million, compared to trade receivables of approximately $309 million in the previous year. Throughout the 20-F the company reapproved the previous statements, and added in relevant part:

**AEGEAN MARINE PETROLEUM NETWORK INC.**
**CONSOLIDATED BALANCE SHEETS**
**(Expressed in thousands of U.S. dollars – except for share and per share data)**

| | December 31, | |
| --- | --- | --- |
| | 2016 | 2015 |
| | | Revised |
| **ASSETS** | | |
| **CURRENT ASSETS:** | | |
| Cash and cash equivalents | $ 93,836 | $139,314 |
| Trade receivables, net of allowance for doubtful accounts of $8,647 and $7,278 as of December 31, 2016 and 2015, respectively (Note 2 and 3) | 503,751 | 309,874 |
| Trade receivables from related companies (Note 4) | 11,509 | 18,963 |
| Due from related companies (Note 4) | 9,548 | 6,887 |
| Derivative asset (Note 14) | - | 22,416 |
| Inventories (Note 5) | 187,766 | 114,531 |
| Prepayments and other current assets, net of allowances for doubtful accounts of $2,160 and $565, as of December 31, 2016 and 2015, respectively (Note 6) | 95,885 | 116,004 |
| Deferred tax asset (Note 23) | 3,769 | 2,133 |
| Restricted cash (Note 2) | 3,188 | 828 |
| **Total current assets** | **909,252** | **730,950** |

18.     The statements in paragraphs ¶16-17 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that: (i) Aegean had improperly accounted for an approximate $200 million of accounts receivable as of December 31, 2017; (ii) Aegean failed to maintain effective internal control over financial reporting, and (iii) as a result of the foregoing, Defendants' statements about Aegean's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

C.     **The Truth Emerges**

19.     On April 30, 2017, Aegean filed a Form 12b-25 Notification of Late Filing with the SEC for its annual report on Form 20-F for the year ended December 31, 2017.

20.     On May 22, 2018, Aegean filed a Form 6-K with the SEC announcing an internal review of its financial reporting ("May 2018 Form 6-K"). Aegean also issued a press release attached as exhibit 99.1 to the May 2018 Form 6-K providing business updates on the Company. Therein, the Company stated in relevant part:

**Aegean Marine Petroleum Network Inc. Provides Business Updates**

*Announces Appointment of Donald Moore as Chairman of the Board*

*Announces Continuing Strategic and Operational Review to Maximize Return on Capital*

*Announces Plans to Move Corporate Headquarters and Establish Independent Corporate Identity*

*Reports Stable Preliminary First Quarter Operating Metrics*

*Announces Receipt of Expected NYSE Notice Regarding Late Form 20-F Filing*

NEW YORK, May 22, 2018 -- Aegean Marine Petroleum Network Inc. (NYSE:ANW) ("Aegean" or the "Company" ), a leading international marine fuel logistics company, today provided updates on its business and issued the following statement:

Aegean has reinvigorated its Board of Directors with the addition of three new independent directors, and today announced the appointment of Donald Moore to serve as Chairman of the Board.

The Board of Directors has also directed management to conduct a comprehensive strategic and operational review focused on maximizing profitability and return on capital. This includes an evaluation of the Company's physical assets, existing footprint, and the capital efficiency of every business activity in which the Company is engaged and each port in which it operates.

Following the recent termination of the Company's Consulting Agreement with Dimitris Melisanidis, the Company is planning to relocate its principal offices from the current location in a building owned and operated by Mr. Melisanidis. The Company expects the office relocation and related organizational changes to result in significant cost savings.

Separately, Aegean recorded stable operating results in the first quarter of 2018 as network volumes and gross spreads were largely consistent with the

fourth quarter of 2017, reflecting competitive industry conditions and the continued decision to restrain volumes in ports and lines of business with lower margin profiles. Aegean's business continues to generate positive cash flow and the management team remains focused on continuing to serve the Company's strong global customer base.

Aegean continues to work through its annual reporting process, which includes a thorough review by the recently recomposed audit committee of the Board of Directors (the "Audit Committee") and the Company's recently appointed Chief Financial Officer. The Company and its advisors are working diligently to complete these reviews as soon as possible. The Company is pleased to have the continued support of its lenders and other stakeholders in connection with this process.

Aegean is committed to being a leader in the physical supply and marketing of marine fuel and is confident that its Board of Directors and management team are taking the right actions to position the Company for long-term success.

Aegean also announced that it has received an expected notice from the New York Stock Exchange (the "NYSE") stating that the Company is not in compliance with the NYSE's continued listing requirements under the timely filing criteria outlined in Section 802.01E of the NYSE Listed Company Manual due to the delay in filing the Company's Annual Report on Form 20-F for the fiscal year ended December 31, 2017 (the "2017 Form 20-F").

As previously disclosed, the Company was unable to file its 2017 Form 20-F without unreasonable effort or expense due to the need for additional time to complete the Company's consolidated financial statements to be included therein, and the related assessment of internal controls over financial reporting. In connection with the Company's internal review of its financial reporting, the Audit Committee is conducting a review of certain matters relevant to the preparation and completion of the Company's annual financial statements. The Company will not be in a position to file its 2017 Form 20-F until after the Audit Committee completes its review. At this time, the Company cannot predict with certainty when the above-referenced review of the 2017 financial statements will be completed. The Company does not expect to make further comment regarding such review until its conclusion.

In accordance with NYSE rules, Aegean has contacted the NYSE to discuss the status of the late filing and is issuing this required press release. The NYSE informed Aegean that, under NYSE rules, Aegean will have six months from the 2017 Form 20-F due date to file the 2017 Form 20-F with the U.S. Securities and Exchange Commission (the "SEC"). Aegean can regain compliance with the NYSE listing standards at any time prior to that date by filing its 2017 Form 20-F.

21.     On June 5, 2018, Aegean filed a Form 6-K with the SEC announcing the preliminary findings of its internal review of its financial reporting ("June 2018 Form 6-K"). Therein, the Company stated in relevant part:

### Aegean Marine Petroleum Network Inc. Provides Update on Financial Reporting Internal Review

*Recomposed Board and Management Team Taking Action to Enhance Transparency, Improve Performance and Maximize Profitability*

*Company Continues to Focus on Serving Strong Global Customer Base*

*Comprehensive Strategic and Operational Review Focused on Maximizing Profitability and Return on Capital*

**NEW YORK, June 4, 2018** – Aegean Marine Petroleum Network Inc. (NYSE:ANW) ("Aegean" or the "Company"), a leading international marine fuel logistics company, today provided an update on its ongoing internal review by the audit committee of the Company's Board of Directors (the "Audit Committee").

As previously disclosed, Aegean reported in a Form 6-K filed with the U.S. Securities and Exchange Commission ("SEC") on May 21, 2018 that the Audit Committee, is conducting a review of certain matters relevant to the preparation and completion of the Company's annual financial statements for the year ended December 31, 2017. The Audit Committee, which is now solely comprised of the three recently elected independent members of the Board, previously retained independent legal counsel to assist with this review.

***Based on the preliminary findings of the review, the Audit Committee believes that approximately $200 million of accounts receivable owed to the Company at December 31, 2017 will need to be written off. These amounts are currently due from four counterparties that were reflected in the Company's financial statements as of December 31, 2017. There was approximately $172 million as of December 31, 2016 and $85 million as of December 31, 2015 due from these four counterparties. The transactions that gave rise to the accounts receivable ("the Transactions") may have been, in full or in part, without economic substance and improperly accounted for in contravention of the Company's normal policies and procedures.***

At this time, the Company cannot determine the full impact on the financial statements or how this adjustment will be recorded. In addition, there could be other adjustments that result from the Audit Committee's review that could impact the financial statements.

"Under the guidance of a reinvigorated Board, independent Audit Committee, and refreshed management team, Aegean continues to make progress in working through its annual reporting process and ongoing review of historical financial reporting," said Donald Moore, Chairman of the Board. "The new Board is taking all necessary actions to improve financial and operating performance and enhance both transparency and corporate governance in order to deliver value to our shareholders and other stakeholders."

As previously announced, the Board has directed management to conduct a comprehensive strategic and operational review focused on maximizing profitability and return on capital. This includes an evaluation of the Company's physical assets, existing footprint, and the capital efficiency of every business activity in which the Company is engaged and each port in which it operates.

Mr. Moore continued, "We thank our employees for their continued dedication and our new and existing customers and suppliers for their continued support. We are confident that Aegean is moving toward its goal of being the leader in the physical supply and marketing of marine fuel."

The Audit Committee is continuing its review and investigation of the Transactions and other matters, with the assistance of independent counsel and forensic accounting advisors, and expects to recommend to the Company that it pursue claims against individuals and entities involved in the Transactions. The Audit Committee is taking all the necessary and appropriate steps to identify weaknesses in the Company's internal controls and remedy any such weaknesses. A number of individuals employed by the Company across multiple functions who are believed to have been involved in the Transactions have been terminated or placed on administrative leave pending the outcome of the investigation. The Company has reported its preliminary findings to the SEC and the Department of Justice and intends to cooperate with any resulting investigations. The Company does not intend to provide an update on this process until the review is completed.

Emphasis added.

22.     On this news, the price of the Company's common stock declined $2.03 from a close on June 4, 2018 at $2.85 per share of Aegean common stock, to, on June 5, 2018, at the time of the filing of this complaint, at $0.82 per share of Aegean common stock, ***a drop of approximately 71.23%.***

## ADDITIONAL SCIENTER ALLEGATIONS

23.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Aegean, their control over, and/or receipt and/or modification of Aegean's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Aegean, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

24.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Aegean's misconduct and its lack of operational and financial controls was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Aegean's common stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other

Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

25. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Aegean's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Aegean's common stock to be artificially inflated. Plaintiff and other Class members purchased Aegean's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

<u>PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET</u>

26. At all relevant times, the market for Aegean common stock was an efficient market for the following reasons, among others:

> (a) Aegean common stock met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;
>
> (b) During the Class Period, Aegean common stock were actively traded, demonstrating a strong presumption of an efficient market;
>
> (c) As a regulated issuer, Aegean filed with the SEC periodic public reports during the Class Period;
>
> (d) Aegean regularly communicated with public investors via established market communication mechanisms;

(e) Aegean was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Aegean was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

27.     As a result of the foregoing, the market for Aegean common stock promptly digested current information regarding Aegean from all publicly available sources and reflected such information in Aegean's stock price. Under these circumstances, all purchasers of Aegean common stock during the Class Period suffered similar injury through their purchase of Aegean's common stock at artificially inflated prices and a presumption of reliance applies.

28.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Aegean.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

29.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

30.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

31.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Aegean who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Aegean common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

33.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aegean securities were actively traded on the NYSE.

While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Aegean or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, as of September 30, 2017, Aegean had more than 40,640,422 shares of common stock outstanding. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

35.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)     whether the price of Aegean securities during the Class Period was

artificially inflated because of the defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Violation of Section 10(b) and Rule 10b-5 Against All Defendants

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Aegean common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

40.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Aegean securities in violation of Section 10(b) of the Exchange

Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

41.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Aegean as specified herein.

42.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Aegean's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Aegean and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Aegean common stock during the Class Period.

43.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports

19

and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

44.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Aegean's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

45.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Aegean's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Aegean's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired

Aegean's common stock during the Class Period at artificially high prices and were or will be damaged thereby.

46.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Aegean's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Aegean securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

47.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

48.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

49.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II
### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Aegean within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

52.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, Aegean, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

54.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

55.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as

class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)    Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: June 5, 2018

*/s/ Eduard Korsinsky*
**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:ek@zlk.com

SCHEDULE A

**Nick Simco**
**Transactions in Aegean Marine Petroleum Network Inc. (ANW) Common Stock**
**Class Period: April 28, 2016 and June 4, 2018, inclusive**

| Date of Transaction | Buy (B) or Sell (S) | Quantity | Price ($) | Cost/Proceeds ($) |
|---|---|---|---|---|
| 9/26/2016 | B | 350 | 10.5000 | 3,675.00 |
| 12/14/2018 | Dividend Reinvestment | 0.5738 | 12.2000 | 7.00 |
| 4/4/2018 | Dividend Reinvestment | 1.6558 | 2.1500 | 3.56 |
| 5/3/2018 | B | 300 | 3.3500 | 1,005.00 |



LEVI&KORSINSKY LLP

30 Broad Street, 24th Floor
New York, NY 10004
T:212-363-7500
F:212-363-7171
www.zlk.com

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Nick Simco, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Aegean Marine Petroleum Network Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this June 5, 2018.

Name: Nick simco

Signed:

