

June 30, 2020

*In re ForceField Energy Inc. Sec. Litig.*, No. 15 Civ. 3020 (NRB), 2017 WL 1319802, at *11 (S.D.N.Y. Mar. 29, 2017)
Honorable Naomi Reice Buchwald
United States District Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:  *In re Aegean Marine Petroleum Network Inc. Sec. Litig.*, Case No. 1:18-cv-04993-NRB**

Dear Judge Buchwald:

Pursuant to Rule 2(E)(1) of Your Honor's Individual Practices, Lead Plaintiff Utah Retirement Systems submits this letter outlining the substantive arguments made in its Memorandum Opposition to Defendant Dimitris Melisanidis' Rule 12(b)(6) Motion to Dismiss the Consolidated Class Action Complaint, filed today.[1]

**Relevant Background**

Defendant Melisanidis, a Greek billionaire with numerous enterprises around the world and a highly unsavory past, is at the heart of the massive scheme to defraud investors.  He founded Aegean Marine Petroleum Network ("Aegean" or the "Company") in 1995 and took the Company public in 2006. Contrary to his assertions (Mem. 1,4), Melisanidis did not become a mere figurehead after the IPO, he remained a senior executive within management and continued to control Aegean through its employees, access to the Company's documents and as its major shareholder (¶¶10, 15, 50, 136, 205, 330, 338, 371-78) (references to "¶__" are to the Complaint (ECF No. 81)).  Melisanidis exercised this control to orchestrate the fraudulent scheme to mislead investors.  He spent years weaving a complex web of sham transactions between Aegean and the other companies he owned and controlled to steal hundreds of millions of dollars from Aegean and to defraud its investors.  Indeed, when an activist investor group wrested control to replace all of the then longstanding Audit Committee members in June 2018, they swiftly uncovered and publicly disclosed that the Company's "senior management" and "affiliates" had engaged in fraudulent conduct, and upon further investigation they publicly admitted that Aegean's financial results had been materially misstated during the Class Period and that the Company's internal controls were materially deficient.

Plaintiff's allegations of fraud are not based on a single misstatement, they are based on (i) a scheme to defraud investors pursuant to Section 10(b) of the Securities Exchange Act and Rule 10(b)(5)(a) & (c) promulgated thereunder; (ii) liability under Section 20(b) of the Exchange Act for false statements issued by the Company and the Officer and Director Defendants; (iii) Section 20A for insider trading; and (iv) control person liability under Section 20(a).

---

[1] This opposition is filed in response to Defendant Dimitris Melisanidis' motion to dismiss (ECF No. 199) and the supporting memorandum, at pages 21-35, arguing Plaintiff has failed to state a claim (ECF No. 200).  Plaintiff's opposition to Melisanidis' Rule 12(b)(2) motion is included in an omnibus opposition memorandum addressing all the Rule 12(b)(2) motions that have been filed.

Honorable Naomi Reice Buchwald
June 30, 2020
Page 2 of 3

### Plaintiff Adequately Alleges Melisanidis Engaged In A Scheme To Defraud In Violation Of Section 10(b) And Rule 10b-5(a) And (c) With The Requisite Scienter

To state a claim under Rule 10b-5(a) or (c) plaintiff must allege that a defendant (i) committed a deceptive or manipulative act; (ii) with *scienter*; (iii) that affected the market for securities or was otherwise in connection with their purchase or sale; and (iv) that defendant's actions caused the plaintiff's injuries. *In re ForceField Energy Inc. Sec. Litig.*, No. 15 Civ. 3020 (NRB), 2017 WL 1319802, at *7 (S.D.N.Y. Mar. 29, 2017) (quoting *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 491-92 (S.D.N.Y. 2005)).

Throughout the Class Period, the Company was portrayed as having a strong and dynamic business model producing a sustainable track record of profitability and growth while maintaining a solid balance sheet and ample liquidity. The stock price climbed accordingly. However, as the Company has since admitted, there was a massive fraudulent scheme to loot the Company spanning **at least** an eight-year period where hundreds of millions of dollars of the Company's cash and assets were misappropriated and the Company's income statements and balance sheets were misrepresented by the use of fraudulent accounting entries and falsified and forged documents (¶26).

Contrary to Melisanidis' assertion, Plaintiff's allegations are not based on his status as a control person. Rather, Plaintiff alleges that he used his *"de facto"* control to orchestrate the fraudulent scheme. Mem. at 23. The Complaint details specific acts that he took in furtherance of the fraudulent scheme, including (i) misappropriating $300 million from Aegean through related-party transactions for the construction of an storage facility; (ii) creating false accounts receivables to manipulate revenue and income to conceal the misappropriation of Company assets; (iii) using his control to force Aegean to pay $100 million for his shares, at an artificially inflated price, and exacerbating a liquidity crisis for the Company and requiring the Company to take out a loan from another company he controlled; and (iv) attempting to conceal the fraud through the HEC Acquisition and other measures. These fraudulent acts also rendered statements about the Company's business, including its financial statements, receivables and internal controls false and misleading (¶¶228-320). Plaintiff has therefore alleged that Melisanidis engaged in a massive fraudulent scheme with the requisite scienter.

### Plaintiff Adequately Alleges That Melisanidis Is Liable Under Section 20(b) For Using Others To Make Materially False And Misleading Statements

Although Melisanidis generally did not speak directly to the investing public about Aegean, he is nonetheless liable for false and misleading statements under Section 20(b)[2] because, through the Company, the Officer and Director Defendants and others, he ensured that materially false and misleading statements were made to investors. Melisanidis seeks to escape Section 20(b) liability *solely* on grounds that Plaintiff fails to allege (i) a primary violation *by him*; or (ii) that he exercised control. Mem. at 31-32. The inquiry here is whether the people Melisanidis "used" committed a primary violation, not whether he committed a primary violation.[3] Plaintiff alleges that the Company and the Officer and Director Defendants issued false and misleading statements during the Class Period regarding, among other things, the Company's (i) financial condition, including false financial statements that violated GAAP; (ii) false and misleading Sarbanes-Oxley Act of 2002 ("SOX") Certifications; and (iii) profitability and solid balance sheets (*see gen.* ¶¶228-320). And the Company admitted that its Class-Period employees and "senior managers" engaged in an elaborate fraudulent scheme. While claims cannot be pursued against the Company because of its bankruptcy, Plaintiff alleges

---

[2] Section 20(b) provides that "[i]t shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person. 15 U.S.C. §78t(b).

[3] *See, e.g., Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996).

its liability as a primary violator (*see, e.g.*, ¶47). Plaintiff further alleges how, with the knowing and/or reckless participation of each of the Officer and Director Defendants, Melisanidis intentionally and/or recklessly caused the Company and his co-Defendants to issue false and misleading statements. In so doing, Melisanidis actively and culpably participated in unlawful activity through and by means of the Company and the Officer and Director Defendants. Thus, Melisanidis is liable for the false and misleading statements under Section 20(b).

### Plaintiff Adequately Alleges Insider Trading Claims Under Section 20A Against Melisanidis

Before the massive fraud was revealed, Melisanidis engaged in insider trading in violation of Section 20A when he sold his entire stake in Aegean directly to the Company at artificially inflated prices for proceeds of approximately $100 million on September 15, 2016 (¶¶15, 50, 178-90). Plaintiff states a claim under Section 20A by alleging (1) a predicate securities violation of the Exchange Act, and (2) sufficient facts showing that the defendant traded the securities at issue contemporaneously with the plaintiff.[4] *First*, Plaintiff alleges that Melisanidis, as well as others, violated Sections 10(b), 20(b) and 20(a) by engaging in a scheme to defraud (¶¶145-213), including by engaging in insider selling (¶¶178-90, 511). As courts have long held, any violation of the Exchange Act is a predicate act under Section 20A. *In re Refco Sec. Ltig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007). *Second*, Plaintiff's Certification, appended as Ex. 1 to the Complaint, shows it traded contemporaneously with Melisanidis. The repurchase closed on September 15, 2016 (¶¶178, 181). Plaintiff purchased 3,717 shares of Aegean stock the next day on September 16, 2016 (¶42 & Ex. 1, at p. 2 of Ex. A).

### Plaintiff Adequately Alleges That Melisanidis Was A Control Person Liable Under Section 20(a)

Melisanidis argues that to plead control-person liability under Section 20(a), Plaintiff must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." Mem. at 30. Even assuming this is the standard, Plaintiff satisfies it. *First*, Plaintiff adequately alleges primary violations by alleging facts to support the Company's violation of the federal securities laws, both in terms of engaging in a scheme to defraud and by issuing false statements as discussed above. *Second*, Melisanidis controlled Aegean through his voting control, position in the Company, power over officers and directors and control over the Company's books and records. *DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 220 (S.D.N.Y. 2019). *Third*, Plaintiff also alleges that Melisanidis exercised his control to culpably participate in the fraud (as discussed above).

### Conclusion

Melisanidis' motion to dismiss on Rule 12(b)(6) grounds should therefore be dismissed.[5]

Respectfully submitted,

*/s/ Nicole Lavallee*

Nicole Lavallee

cc: All counsel (via ECF)

---

[4] *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 642 (2008), *abrogated on other grounds by Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016).

[5] If the Court finds otherwise, Plaintiff respectfully requests leave to amend.