

June 30, 2020

**VIA ECF**

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:**   *In re Aegean Marine Petroleum Network, Inc*. Sec. Litig., Case No. 1:18-cv-04993 (NRB)

Dear Judge Buchwald:

We represent Lead Plaintiff Utah Retirement Systems ("Plaintiff") in the above-referenced action and respectfully submit this letter on behalf of Plaintiff pursuant to Item 2.E.1 of your Honor's Individual Practices to outline the substantive arguments advanced in Plaintiff's opposition brief to the motion to dismiss and the accompanying memorandum ("Mem.") filed jointly by Deloitte Certified Public Accountants, S.A. ("Deloitte Greece") and PricewaterhouseCoopers Auditing Company, S.A. ("PwC Greece") (collectively, the "Greek Auditors"). ECF Nos. 187-88.  For the reasons set forth below, the Court should deny the motion to dismiss filed by the Greek Auditors.

In this case, the fraudulent and manipulative conduct alleged in the Complaint did occur.  There is no contention by the Greek Auditors to the contrary.  Prior to the bankruptcy filing by Aegean Marine Petroleum Network, Inc. ("Aegean" or "Company"), Aegean through its own Reconstituted Audit Committee determined that the Company's (i) financial results had been manipulated **by improperly booking approximately $200 million in accounts receivable from bogus transactions with four shell companies controlled by former affiliates of the Company** (since identified as the Company's founder, Dimitris Melisanidis) ("Melisanidis"); (ii) approximately $300 million in cash and assets had been misappropriated by former affiliates, including through a 2010 contract with OilTank Engineering & Consulting Ltd. ("OilTank"); and (iii) insiders had engaged in additional actions to defraud the Company including prepayments for future oil deliveries which were never made.  ¶479.[1]

The Reconstituted Audit Committee found that these improper accounting practices and manipulations were in direct violation of, or contributed to, a direct violation of, GAAP rendering Aegean's consolidated financial statements materially false, misleading, unreliable and in need of restatement for at least the time periods of the fiscal years ("FYs") ended December 31, 2015 and 2016, and each of the respective interim reporting periods between March 31, 2015 and December 31, 2017.  ¶¶26, 27, 221, 223-27, 479.  Further, the Company concluded that given that the acknowledged misappropriation of Aegean's cash and other assets through fraudulent activities occurred "as early as 2010," Aegean's consolidated financial statements were

---

[1] Paragraph references are to the Consolidated Class Action Complaint ("Complaint") (ECF No. 81).  All capitalized terms not otherwise defined herein have the same meaning as set forth in the Complaint.  Unless otherwise noted, all emphasis has been added.

Honorable Naomi Reice Buchwald
June 30, 2020
Page 2 of 3

also materially false, misleading and unreliable for the time periods of (i) the FYs ended December 31, 2010, 2011, 2012, 2013, 2014, 2015 and 2016, included in the Company's Annual Reports on Form 20-F filings; and (ii) each of the respective interim reporting periods between March 31, 2010 and December 31, 2017, included in the Company's Quarterly Reports on Form 6-K.  ¶¶26(a), 26(b), 166, 177, 222, 385, 479.  The Reconstituted Audit Committee further determined that the Company's internal controls were ineffective and materially deficient for all of these years.  *Id.*  Accordingly, it concluded, there was a fraud and conspiracy to defraud the Company and its investors.  ¶¶26(a), 331.  Unfortunately, the magnitude of the fraud was so massive that no simple restatement would suffice and, shortly thereafter, the Company filed a bankruptcy petition.  ¶¶11, 26, 29, 47, 480.  Here, the magnitude of the fraud itself supports an inference that the Greek Auditors acted with the requisite scienter in issuing their false statements in their Audit Opinions.  *See e.g. In re Bear Stearns Cos., Inc. Sec. & "ERISA" Litig.,* 763 F. Supp. 2d 423, 517 (S.D.N.Y. 2011) (same), *on reconsideration*, No. 07 Civ. 10453, 2011 WL 4072027, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011) ("the enormous amounts at stake coupled with the detailed allegations regarding the nature and extent of [the client's] fraudulent accounting and [the accountant's] failure to conduct a thorough and objective audit create a strong inference that [the auditor] was reckless in not knowing that its audit opinions materially misrepresented [the company's] financial state") (alteration in original) (citations omitted).

The Greek Auditors raise six arguments as to why their motion to dismiss should be granted.  Each of these arguments, however, fails.  First, the Greek Auditors contend that they are absolved from potential liability because most of the Red Flags that they allegedly ignored were publicly disclosed. GA Mem. at 11-23.  However, none of their authorities support this proposition and, in fact, courts routinely hold that Red Flags, publicly known or otherwise, create an inference of scienter if they would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors. *See e.g., Varghese, v. China Shenghuo Pharm. Holdings, Inc*., 672 F. Supp. 2d 596, 610 (S.D.N.Y. 2009) ("Plaintiffs allege that HB & M was aware **through CSP's own disclosures**, that CSP had serious internal control problems.").

Second, the Greek Auditors argue that Plaintiff fails to allege its actual knowledge of the remaining "non-public" Red Flags.  However, the Complaint is replete with allegations that the Greek Auditors knew or should have known of the "non-public" Red Flags.  The allegations of reckless disregard of the Red Flags by auditors, coupled with the undisputed evidence of GAAP and the Public Company Accounting Oversight Board's ("PCAOB") violations, are precisely the type of allegations which courts find support a strong inference of scienter.

Third, they argue that many of the Red Flags – which they view in isolation – were unrelated to the fraud.  However, the Complaint soundly articulates how and why **collectively** the Red Flags should have placed the Greek Auditors on notice of the numerous transactions that were at the crux of the admitted fraud.  These Red-Flag allegations include that (i) Melisanidis, a known criminal defrauder, exercised significant control over Aegean and caused Aegean to enter into a number of related-party transactions whereby Aegean paid large sums to companies owned and controlled by him and his family, including to OilTank, through which $300 million was stolen from Aegean; (ii) the Company's receivables were escalating while sales were declining, which relates directly to the $200 million of inflated accounts receivables stemming from sham transactions with companies owned and controlled by insiders; (iii) other related-party companies were delinquent in paying amounts owed to Aegean; and (iv) Deloitte Greece's opinion, and the Company's admission of, internal control deficiencies during the Class Period.

Fourth, they argue that Plaintiff does not specify exactly how the Greek Auditors performed their audits. However, Plaintiff details how, by ignoring these Red Flags, the Greek Auditors intentionally and/or recklessly violated numerous PCAOB Standards governing their audits, which more than satisfies the pleading standard. In addition, Plaintiff's scienter allegations go beyond the disregard of numerous Red Flags and include other facts, such as the magnitude of the fraud, the speed with which new management identified the fraud and the findings by the PCAOB discussed below, including that Deloitte Greece's 2015 audit of a company alleged to be Aegean failed to "**accomplish the essential purpose of the audit, and it means that, based on the audit work performed, the audit opinion should not have been issued**." ¶442 (emphasis in original).

Fifth, they argue that Plaintiff has failed to allege that the Greek Auditors subjectively believed that each of their statements were false as they contend Plaintiff must under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). However, even assuming *arguendo* that their Audit Opinions are statements of "opinion," the Complaint meets *Omnicare's* pleading standard both because the Greek Auditors' Class-Period Audit Opinions were embedded with the false facts and because they omitted material information (regarding Aegean's financials and their compliance with PCAOB Standards).

Finally, the Greek Auditor's argument that that they were "duped" by an elaborate scheme because "[m]ore than [a] dozen high-ranking Aegean insiders engaged in an elaborate scheme to steal company money, all the while taking extensive precautions to conceal their actions from auditors, regulators and investors," (Mem. at 39) is wholly disingenuous. The clues were available for any auditor of modest ability to have discovered the fraud. But no such discovery could have occurred if, as here, the Greek Auditors chose to ignore the warning signs. In fact, as alleged, following the discharge of Aegean's Audit Committee, it took the Reconstituted Audit Committee only a matter of weeks to discover the fraud. *See* ¶325; *Bear Stearns,* 763 F. Supp. 2d at 517 ("[T]he fact that the new CEO ... discovered the accounting violations within months of taking the position is a strong indication that these accounting violations were obvious enough that a new officer found them quickly ... [T]he rapid discovery of the alleged accounting violations are further support for the several strong inferences that KPMG's audit contained deliberately reckless misstatements regarding New Century's accounting practices." (alteration in original) (citing *New Century*, 588 F. Supp. 2d at 1231, 1236).

In sum, Plaintiff respectfully requests that the Court deny the Greek Auditors' Motion to Dismiss.[2]

Yours sincerely,

*/s/ Nicole Lavallee*

Nicole Lavallee

cc: All counsel (via ECF)

---

[2] If the Court finds otherwise, Plaintiff respectfully requests leave to amend.