UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE AEGEAN MARINE PETROLEUM NETWORK, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-04993 (NRB) <br><br> Hon. Naomi Reice Buchwald |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR AN ORDER: (I) PRELIMINARILY APPROVING PROPOSED PARTIAL CLASS ACTION SETTLEMENT; (II) PRELIMINARILY CERTIFYING THE SETTLEMENT CLASS; AND (III) APPROVING NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF THE LITIGATION .................................................................. 3

III.    PRELIMINARY APPROVAL OF THE STIPULATION IS WARRANTED ................. 5

    A.      Standards Governing Approval of Class Action Settlements ........................................ 5

    B.      The Court "Will Likely Be Able To" Approve the Proposed Settlement Under
        Rule 23(e)(2) ....................................................................................................... 7

        1.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class........ 7

        2.      The Stipulation is the Result of Arm's-length Negotiation Between
            Experienced Counsel ..................................................................................... 8

        3.      The Settlement's Terms Are Adequate........................................................... 9

            (a)      The Substantial Benefits for the Class, Weighed Against the
                Inherent Risks of Litigation Support Preliminary Approval ............... 9

            (b)      The Proposed Method of Distributing Relief to the Partial
                Settlement Class is Effective .......................................................... 11

            (c)      Lead Plaintiff's Application for the Establishment of a Litigation
                Expense Fund is Reasonable ........................................................... 12

            (d)      There Are No Side Agreements Other Than With Respect to Opt
                Outs .............................................................................................. 13

        4.      All Settlement Class Members Are Treated Equitably .................................. 13

    C.      The Remaining *Grinnell* Factors Further Support Preliminary Approval ................... 14

        1.      The Reaction of the Settlement Class to the Settlement ............................... 15

        2.      The Stage of the Proceedings ....................................................................... 15

        3.      Defendants' Ability To Withstand A Greater Judgment ............................... 16

        4.      The Risk of Maintaining the Class Action Through Trial .............................. 16

        5.      The Settlement Amount is Reasonable Considering The Range of
            Possible Recoveries ...................................................................................... 16

IV.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR THE
       PURPOSE OF THE PARTIAL SETTLEMENT  ........................................................... 17

       A.    Numerosity ...................................................................................................... 18

       B.    Commonality and Typicality ........................................................................... 18

       C.    Adequacy of Representation  ........................................................................... 20

       D.    Rule 23(b)(3) Factors ...................................................................................... 21

             1.    Predominance  ....................................................................................... 21

             2.    Superiority ............................................................................................ 22

V.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
       CLASS NOTICE AND APPOINT A.B. DATA AS CLAIMS ADMINISTOR ............ 23

VI.    PROPOSED SCHEDULE OF EVENTS ...................................................................... 24

VII.   CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................................. 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ............................................................................................................. 22

*Beneli v. BCA Fin. Servs., Inc.*,
    324 F.R.D. 89 (D.N.J. 2018) ............................................................................................... 16

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) ..................................................................................... 20, 21

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019), *appeal
    withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2,
    2020) ............................................................................................................................... 6, 10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209
    F.3d 43 (2d Cir. 2000) .................................................................................................. passim

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) .................................................................................................. 18

*Diaz v. FCI Lender Servs., Inc.*,
    No. 17-CV-8686 (AJN), 2020 WL 4570460 (S.D.N.Y. Aug. 7, 2020) ............................. 20

*Gruber v. Gilbertson*,
    No. 16-cv-9727-JSR, 2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019), *modified*, No. 16-CV-09727-
    JSR, 2021 WL 3524089 (S.D.N.Y. Aug. 10, 2021) ......................................................... 23

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................. 8

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ......................................................................................... 17, 22

*In re Barrick Gold Sec. Litig.*,
    314 F.R.D. 91 (S.D.N.Y. 2016) .......................................................................................... 23

*In re Cal. Micro Devices Sec. Litig.*,
    965 F. Supp. 1327 (N.D. Cal. 1997) ................................................................................... 12

*In re Currency Conversion Fee Antitrust Litig.*,
   No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)................................... 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig. (Facebook I)*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ........................................................................ 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig. (Facebook II)*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................................ 10

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 15

*In re Grana y Montero S.A.A. Sec. Litig.*,
   No. 17-CV-01105 (LDH) (ST), 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021), *report and
   recommendation adopted*, No. 17-CV-01105 (LDH) (ST), 2021 WL 4173170 (E.D.N.Y. Sept.
   14, 2021) ........................................................................................... 19, 21

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................... 15, 16

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) ..................................................................... 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................ 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MDL 2262(NRB), 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014)........................................... 6

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
   MDL No. 1658 SRC, 2013 WL 396117 (D.N.J. Jan. 30, 2013) .................................... 20

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................ 14

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................ 14

*In re Novo Nordisk Sec. Litig.*,
   No 3:17-cv-209-BRM-LHG, 2020 WL 502176 (D.N.J. Jan. 31, 2020) ......................................... 19

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................ 18

*In re Par Pharm. Sec. Litig.*,
   No. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ........................................ 13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11, 29 (E.D.N.Y. 2019) ............................................................................ 6

*In re Refco, Inc. Sec. Litig.*,
    No. 05 CIV. 8626 (JSR), 2010 WL 11586941 (S.D.N.Y. May 11, 2010) .................................. 14, 22

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-SD, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................ 21

*In re Stock Exchanges Options Trading Antitrust Litig.*,
    No. 99 Civ. 0962 (RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ............................ 23

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) .............................................................................. 23

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ............................ 13

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................ 6

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 CIV 3288(DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ............................ 12

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................................... 19

*Mikhlin v. Oasmia Pharm. AB*,
    No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ................... 8, 10, 13

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret.*
    *Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ................................ 13

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ................................................................................. 13

*Puddu v. 6D Glob. Techs., Inc.*,
    No. 15-CV-8061 (AJN), 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ......................... 18, 19, 22

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ................................................................................... 22

*Schuler v. Medicines Co.*,
    No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ............................ 8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261  (S.D.N.Y. May 14, 2004) ............................ 12

*Wallace v. IntraLinks,*
   302 F.R.D. 310 (S.D.N.Y. 2014) ................................................................. 18

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)......................................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir.2005).............................................................................. 23

**Statutes**

15 U.S.C. §78u-4(a)(7)(A)-(F) ................................................................................. 24

**Rules**

Fed. R. Civ. P. 23......................................................................................... passim

**Docketed**

*Simco v. Aegean Marine Petroleum Network, Inc., et al.,*
   No. 1:18-cv-04993-NRB ................................................................................... 4

Lead Plaintiff Utah Retirement Systems ("Lead Plaintiff" or "URS") respectfully submits this memorandum in support of its motion for entry of an Order, *inter alia*, (a) preliminarily approving the Partial Settlement set forth in the Stipulation and Agreement of Partial Settlement dated November 9, 2021 (the "Stipulation" or "Partial Settlement")[1]; (b) preliminarily certifying the Settlement Class; (c) providing for Notice (the "Preliminary Approval Order"), which is attached as Exhibit A to the Stipulation; (d) appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel for purposes of the Partial Settlement only; and (e) scheduling a Final Approval Hearing.

## I.   **INTRODUCTION**

Lead Plaintiff and PricewaterhouseCoopers Auditing Company S.A. ("Settling Defendant" or "PwC Greece") have negotiated a proposed Partial Settlement of the claims against PwC Greece in exchange for a cash settlement of $14,900,000 (the "Settlement Amount") for the benefit of the Settlement Class and an agreement by PwC Greece to provide specific cooperation in the Action, which includes an agreement to produce certain documents.[2]  The proposed Partial Settlement, detailed in the Stipulation, would resolve all claims against PwC Greece in this Action and, if approved, would provide the members of the Settlement Class who allegedly have a claim against PwC Greece with a substantial, immediate concrete benefit and avoid the protracted risks and uncertainties inherent in complex, securities class action litigation.  *See* Lavallee Decl. Ex. 1.  The Partial Settlement between Lead Plaintiff and PwC Greece does

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation.  The Stipulation is attached as Exhibit 1 to the Declaration of Nicole Lavallee ("Lavallee Decl."), filed herewith.  Unless otherwise indicated, all emphasis is added and all alterations, internal quotation marks and citations are omitted.

[2] The Settlement Class is defined generally as all Persons who purchased or otherwise acquired Aegean Marine Petroleum Network, Inc. ("Aegean" or the "Company") securities (defined below) (or wrote Aegean put options) between February 27, 2014 through November 5, 2018, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby.  Excluded from the Settlement Class are: (a) Defendants and any affiliates or subsidiaries of Defendants; (b) Persons who have been dismissed from this Action ("Dismissed Defendants"); (c) present or former officers, directors, partners or controlling persons of Aegean, its subsidiaries or its affiliates, any Defendant or any Dismissed Defendant and their immediate family members; (d) the directors' and officers' liability carriers and any affiliates or subsidiaries thereof of any Defendant, Dismissed Defendant or Aegean; (e) any entity in which any Defendant, Dismissed Defendant or Aegean has or has had a controlling interest; and (f) the legal representatives, heirs, estates, agents, successors or assigns of any person or entity described in the preceding categories.  Also excluded from the Settlement Class is any Settlement Class Member that validly and timely requests exclusion as approved by the Court.

not affect or compromise any claims asserted and ongoing against the Non-Settling Defendants.[3]  The Partial Settlement is the end result of arm's-length negotiations between highly experienced counsel, following an extensive investigation by Lead Counsel, hotly contested motions to dismiss, and the commencement of formal discovery.

Lead Plaintiff secured the Partial Settlement due to its vigorous efforts over the course of over two years of litigation.  These efforts included, *inter alia*: (a) detailed reviews of Aegean's public U.S. Securities and Exchange Commission ("SEC") filings, annual reports, press releases, earnings calls and other publicly available information spanning over a decade; (b) researching and analyzing documents filed in connection with several court cases involving Aegean and/or the Defendants, including various pleadings and discovery filed in the Aegean bankruptcy proceedings; (c) extensive consultation with, and analysis by, damages, accounting and international privacy law consultants; (d) review of analysts' reports and articles relating to Aegean; (e) extensive briefing of the asserted claims in opposing Defendants' motions to dismiss; and (f) research of the applicable law with respect to the claims asserted in Lead Plaintiff's Consolidated Class Action Complaint (the "Consolidated Complaint" or "Compl.") (ECF No. 81) and the potential defenses thereto.  *See, e.g.*, Lavallee Decl. ¶6.

Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount provided under the Partial Settlement and of the risks and expenses of protracted litigation against PwC Greece, Lead Counsel and Lead Plaintiff submit that the proposed Stipulation is an excellent result and in the best interests of the Settlement Class, and ask that the Court enter the proposed Preliminary Approval Order,[4] which will, *inter alia*:

(i)     preliminarily certify the Settlement Class for purposes of the Partial Settlement only;

(ii)    preliminarily approve the terms of the Stipulation;

(iii)   hold that the manner and form of notice detailed in the proposed Preliminary Approval Order satisfies due process and provides the best notice practicable under the circumstances;

---

[3]  The Non-Settling Defendants are: Dimitris Melissanidis, Spyros Gianniotis and Deloitte Certified Public Accountants, S.A. as well as any other defendant(s) later brought into the case.  The Settling Defendant and the Non-Settling Defendants are collectively referred to as "Defendants."

[4]  *See* Lavallee Decl. ¶14 & Ex. 1, at Ex. A.

(iv)     appoint A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator;

(v)      appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel for purposes of the Partial Settlement only; and

(vi)     schedule the Final Approval Hearing and set out a schedule and procedures for: disseminating the Notice and Proof of Claim and Release Form ("Claim Form") and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Stipulation, the proposed PwC Greece Plan of Allocation, and/or Lead Counsel's application for the establishment of a Litigation Expense Fund in the amount of $2 million; and submitting papers in support of final approval of the Stipulation.

## II.    <u>SUMMARY OF THE LITIGATION</u>

In this Action, Lead Plaintiff alleges that Defendants engaged in a long-running, multi-faceted concealed fraud in which they (a) significantly overstated Aegean's[5] income and revenue; (b) overstated the Company's assets and the strength of its balance sheet; (c) issued false and misleading audited financial statements; (d) misled investors concerning the adequacy of the Company's internal controls over financial reporting ("ICFR"); and (e) misappropriated Company assets. *See generally* Consolidated Complaint. Defendants included former officers and directors of Aegean and the two auditing firms that issued audit opinions during the Settlement Class Period.

Because of actions undertaken by certain shareholders, the Company's entire Audit Committee suddenly stepped down in May 2018 and a reconstituted Audit Committee (the "Reconstituted Audit Committee") was formed with new, independent directors. Compl. ¶7. Only weeks later, on June 4, 2018, the Company announced that $200 million in accounts receivable had to be written off because the receivables were based on allegedly fraudulent transactions. *Id.* ¶¶25, 148, 213.

On November 2, 2018, following an internal investigation by the Reconstituted Audit Committee, outside counsel and retained forensic accountants, the Company announced that the Reconstituted Audit Committee had determined that: (a) the Company's financial results were manipulated by improperly booking approximately $200 million in accounts receivables from bogus transactions with four shell companies controlled by former employees or affiliates of the Company; (b) approximately $300 million in cash and assets had been misappropriated by former affiliates, including through a 2010 contract with

---

[5] Aegean was an international marine fuel logistics company founded in 1995 by Defendant Dimitris Melisanidis. The Company held is initial public offering in December 2006 and, until its bankruptcy filing in the fall of 2018, its common stock traded on the New York Stock Exchange. Compl. ¶4.

OilTank Engineering & Consulting Ltd.; (c) the revenues and earnings of the Company were substantially overstated in the years 2015, 2016 and 2017 and that both year-end and interim financials for these periods should no longer be relied upon and would need to be restated; (d) there were material weaknesses in the Company's ICRF as of December 31, 2015, 2016 and 2017 and, as such, management's annual report on ICFR as of December 31, 2015, and 2016 included in the Company's Annual Reports on Form 20-F and also for the 2017 interim results should no longer be relied upon and would need to be restated; (e) insiders had engaged in additional actions to defraud the Company, including engaging in prepayments for future oil deliveries which were never made; and (f) and the U.S. Department of Justice had issued a grand jury subpoena in connection with suspected felonies. *See, e.g.*, Compl. ¶479. Then, on November 6, 2018, Aegean filed bankruptcy proceedings under Chapter 11 of the U.S. Bankruptcy Code in the Southern District of New York, Case No. 18-13374 (MEW). *Id*. ¶47.

On June 5, 2018, an initial complaint was filed against Aegean and certain of its officers and directors in the United States District Court for the Southern District of New York asserting violations of the federal securities laws: *Simco v. Aegean Marine Petroleum Network, Inc., et al.*, No. 1:18-cv-04993-NRB.  ECF No. 1; Lavallee Decl. ¶3.  After full briefing by several investors moving for appointment as lead plaintiff, the Court appointed URS as Lead Plaintiff and approved its selection of Berman Tabacco as Lead Counsel on October 30, 2018.  ECF No. 69; Lavallee Decl. ¶4.

On February 1, 2019, Lead Plaintiff filed its Consolidated Complaint alleging violations of the federal securities laws against Aegean, certain of Aegean's officers and directors, PwC Greece and PricewaterhouseCoopers International Limited ("PwCIL"), PricewaterhouseCoopers LLP ("PwC US"), Deloitte Certified Public Accountants, S.A. ("Deloitte Greece"), Deloitte Touche Tohmatsu Limited ("DTTL") and Deloitte & Touche LLP ("Deloitte US").  ECF No. 81.  Of particular relevance to this Partial Settlement, the Consolidated Complaint alleged that, several years after the start of the Class Period, Aegean's original auditor, Deloitte Greece, was terminated and PwC Greece was appointed Aegean's auditor.  *See* Compl. ¶¶89, 90, 137, 466; Lavallee Decl. ¶5.  It further alleges that PwC Greece issued its audit opinion representing that Aegean's ICFR were adequate and that its 2016 year-end financial statements complied with GAAP on May 16, 2017, which was included in Aegean's Annual Report on

Form 20-F filed with and accepted by the SEC after the market close on May 16, 2017. *Id*. at ¶¶429, 467-68. Thus, the Consolidated Complaint alleges that PwC Greece is liable to members of the Settlement Class who purchased or otherwise acquired Aegean Securities after it issued its audit opinion, or, from the period of May 17, 2017 through November 5, 2018 (the last day of the Class Period). *Id*.

On March 6, 2020, PwC Greece filed a joint motion to dismiss the Consolidated Complaint along with one co-Defendant, Deloitte Greece. ECF Nos. 187-88. Lead Plaintiff opposed the joint motion on June 30, 2020. ECF No. 240. PwC Greece and Deloitte Greece filed their reply on August 20, 2020 (ECF No. 272) and this Court held a lengthy hearing on March 9, 2021. On March 29, 2021, the Court issued a memorandum decision and order that denied PwC Greece and Deloitte Greece's joint motion to dismiss. ECF No. 293. In the same order, the Court granted motions to dismiss for several other defendants, including PwCIL and PwC US, and denied the motions to dismiss for certain other defendants. *Id*.; *see also* Lavallee Decl. ¶7.

Following the Court's hearing and order on the motion to dismiss, counsel for Lead Plaintiff and counsel for PwC Greece began good-faith, arm's-length settlement negotiations. *See* Lavallee Decl. ¶8. On August 26, 2021, following numerous rounds of negotiations, Lead Counsel and PwC Greece's Counsel reached an agreement in principle to settle all claims asserted by Lead Plaintiff in this this Action against PwC Greece and the exchange of mutual releases. *Id*.

## III.   PRELIMINARY APPROVAL OF THE STIPULATION IS WARRANTED

### A.   Standards Governing Approval of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class actions. On December 1, 2018, Rule 23(e) was amended to specify, among other things, that the focus of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The factors identified by amended Rule 23(e)(2) require the Court to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the

method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In determining whether to grant final approval of class action settlements, courts in the Second Circuit also consider the so-called "*Grinnell* factors"—many of which overlap with the Rule 23(e)(2) factors. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[6]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Lead Plaintiff respectfully submits that an analysis of the requirements of Rule 23 and the *Grinnell* factors, set forth below, support preliminary approval of the Partial Settlement here. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, the Court need only find that the proposed settlement fits within the range of possible approval to proceed."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262(NRB), 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) (Buchwald, J.) ("Preliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable.") (alteration in original).

---

[6] As courts sitting in the Second Circuit have noted, amended Rule 23(e)(2) added to, but did not displace the *Grinnell* factors, which the Second Circuit has long used to determine whether a settlement is "fair, reasonable, and adequate." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019), for the proposition that "the new Rule 23(e) factors … add to, rather than displace, the *Grinne[ll]* factors") (applying the Rule 23(e)(2) factors along with the *Grinnell* factors at the final approval stage), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

**B.** **The Court "Will Likely Be Able To" Approve the Proposed Settlement Under Rule 23(e)(2)**

  **1.** **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

As an initial matter, and as set forth in more detail below, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class during the litigation and throughout negotiations with counsel for PwC Greece. *See* Lavallee Decl. ¶¶4-8, 10-18. . Lead Plaintiff URS is a public pension fund with over $40 billion in assets under management that is responsible for investing and managing the retirement funds of thousands of public employees throughout the state of Utah. In this capacity it takes its fiduciary duties very seriously and carefully monitors the litigation working closely with its chosen Lead Counsel. Lead Plaintiff's claims are typical of the claims of the Settlement Class, and they have no antagonist interests. To the contrary, Lead Plaintiff's interest in obtaining the largest possible recovery continues to be aligned with all other Settlement Class Members. Further, Lead Plaintiff retained counsel who are highly experienced in class action litigation and have decades of experience in litigating securities fraud class actions. *Id.* ¶9 & Ex. 2. Moreover, the Settling Parties have been actively litigating this Action since its commencement, during which time Lead Counsel has engaged in extensive litigation, referenced above, including, *inter alia*, investigating claims against Defendants both domestically and abroad, defeating attempts to dismiss the litigation and consulting with damages, accounting and international privacy law consultants. *See id.* ¶¶4-8, 10-18. The result of these efforts is (a) a cash settlement of $14,900,000 that will provide significant relief to the members of the Settlement Class who allegedly have claims against PwC Greece when compared to the risks of likely protracted litigation; and (b) and PwC Greece's cooperation in the Action, which includes an agreement to produce the complete and final set of audit documentation assembled for retention in connection with PwC Greece's integrated audit of the consolidated financial statements and ICFR of Aegean for the fiscal year ended December 31, 2016, which documents have been redacted and produced to a Regulatory Governmental Agency. *See* Stipulation ¶4.6(a). As discussed below, this early Partial Settlement provides an excellent recovery. Lead Plaintiff and Lead Counsel have, therefore, adequately represented the Settlement Class.

**2.    The Stipulation is the Result of Arm's-length Negotiation Between Experienced Counsel**

Prior to negotiating the Partial Settlement, Lead Plaintiff and Lead Counsel expended considerable efforts to successfully overcome the significant issues presented in PwC Greece and Deloitte Greece's joint motion to dismiss, preparing for oral argument and consulting with economists as damages consultants, international law attorneys and accounting consultants both for the purpose of opposing PwC Greece and Deloitte Greece's joint motion and for the purpose of placing Lead Counsel in the best possible position to engage in meaningful settlement discussions with counsel for PwC Greece. *See* Lavallee Decl. ¶¶6-8.   Indeed, counsel for the Settling Parties have worked diligently and advocated zealously on behalf of their respective clients since they were first retained. *Id.* Thus, the Settling Parties were well-equipped to consider the strengths and weaknesses of their positions before negotiating the Partial Settlement. *See*, *e.g.*, *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (noting that "Lead Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement" where it had reviewed publicly available information, conducted an extensive investigation, consulted with an expert, drafted the initial and amended complaints and briefed an opposition to defendants' motion to dismiss).

Additionally, Lead Counsel Berman Tabacco has decades of experience litigating securities class actions. *See* Lavallee Decl. ¶9 & Ex. 2.   As Lead Counsel, their judgment that the settlement is fair and reasonable is entitled to considerable weight. *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation."); *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) ("A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness.").   Similarly, Defendants were well-represented by nationally recognized counsel with deep experience in securities class action suits.  Indeed, the negotiation in this case involved several months of direct communication principally between two highly experienced securities litigators, Joseph Tabacco, of Berman Tabacco on behalf of Lead Plaintiff, and Michael

Bongiorno of WilmerHale on behalf of PwC Greece.  *See* Lavallee Decl. ¶8.  Together, these two lawyers have over 75 years of experience litigating high-profile, complex commercial class actions with great success.  *See, e.g.*, Lavallee Decl. Ex. 2.[7]  Thus, there can be no dispute that the Stipulation was reached in an arm's-length negotiation.

### 3.    The Settlement's Terms Are Fair and Adequate

Rules 23(e)(2)(C) and 23(e)(2)(D) of the Federal Rules of Civil Procedure further direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(C) & (D).  In this case, the Partial Settlement represents an excellent result for the members of the Settlement Class who have alleged claims against PwC Greece given the attendant risks associated with continued litigation.  *See* Lavallee Decl. ¶¶14-17. First, the Partial Settlement provides for $14.9 million as partial payments for members of the Settlement Class, which, as discussed below, is an excellent partial recovery.  Second, PwC Greece shall provide certain cooperation, including the production of certain documents.

Furthermore, Lead Counsel, with the assistance of its damages and accounting consultants, have proposed a plan for allocating the Partial Settlement proceeds that ensures Settlement Class Members will be treated equitably relative to their respective losses.  *See* Lavallee Decl. ¶¶10-13.  As set forth above, PwC Greece issued its allegedly false and misleading audit opinion after-market close on May 16, 2017. Thus, only Persons who purchased or otherwise acquired Securities after May 16, 2017 have claims against PwC Greece.  Accordingly, the PwC Greece Plan of Allocation provides that the Settlement Funds will be limited to Persons who purchased Aegean Securities on or after May 17, 2017, up to and including the last day of the Class Period, November 5, 2018 (the "Relevant Period").

### (a)    The Substantial Benefits for the Settlement Class, Weighed Against the Inherent Risks of Litigation Support Preliminary Approval

In assessing the proposed Settlement, Rule 23(e)(2) requires the Court to balance the benefits afforded to the Settlement Class—including the immediacy and certainty of a recovery—against the significant costs, risks and delay of proceeding with the litigation.  Overlapping with Rule 23(e)(2)(C)(i)

---

[7] *See also* https://www.wilmerhale.com/en/people/michael-bongiorno.

is the first *Grinnell* factor which considers the complexity, expenses and likely duration of the litigation, and the fourth and fifth *Grinnell* factors, which consider the risks of establishing liability and damages.

As a practical matter, there is no question that this case will be particularly onerous and expensive to litigate given that it involves several foreign defendants and non-parties located in Europe. Lavallee Decl. ¶15. Thus, it will necessarily require traveling to Greece and elsewhere to depose witnesses, some through interpreters, and the translation of many Greek documents. *See Christine Asia Co.*, 2019 WL 5257534, at *10. In addition, it is likely that evidence in this matter will need to be collected pursuant to the Hague Convention, a costly and time consuming process. Moreover, in evaluating the settlement of securities class actions, courts have repeatedly recognized that such litigation is complex, uncertain and costly. *Oasmia Pharm.*, 2021 WL 1259559, at *5 ("Class action suits have a well-deserved reputation as being most complex ... and securities class actions are notably difficult and notoriously uncertain to litigate" (citing *In re Facebook, Inc., IPO Sec. & Derivative Litig. (Facebook II)*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018))). This case is no different.

Additionally, Lead Plaintiff's theory of liability, and the defenses proffered in response by PwC Greece, have and will continue to require sophisticated analysis of complex financial data and accounting rules before the case will be ready for trial. Indeed, the complexity, expense and duration of continued litigation through class certification, merits and expert discovery, summary judgment, trial, subsequent post-trial motion practice and a jury verdict would be significant.

Barring a settlement, there is no question that the case against PwC Greece could be heavily litigated, absorbing the time of this Court at considerable further expense and time. Of course, there is no guarantee that the end result of such effort would be better for the Settlement Class, and it could be possibly worse. While Lead Plaintiff believes the case is strong, it recognizes that there are significant risks to the Settlement Class. PwC Greece presented several arguments in its joint motion to dismiss and asserted numerous defenses on the merits, each of which presents potential hurdles to a successful outcome.

Thus, while Lead Plaintiff believes that its case is strong and that its case against the Non-settling Defendants is very robust, the fact remains that the Court at class certification, summary judgment or trial could find PwC Greece's defenses persuasive, which could significantly reduce or eliminate recoverable

damages.

For these reasons, the proposed Partial Settlement creates a cash recovery of $14.9 million that provides an immediate and substantial benefit to the Settlement Class considering the risks posed by continued litigation.[8]

### (b)     The Proposed Notice to the Class and Method of Distributing Relief to the Partial Settlement Class is Fair and Effective

As set forth in Section V, below, and in the Declaration of Eric Schachter of A.B. Data, Ltd. Regarding Notice and Administration ("A.B. Data Decl." or "A.B. Data Declaration") (submitted herewith as Lavallee Decl. Ex. 4), the method and effectiveness of the proposed notice and claims administration process meet the dictates of Rule 23(e)(2)(C)(ii).  The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *Investor's Business Daily*.  *See* A.B. Data Decl. ¶¶4-10.  In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Claim Form and the Preliminarily Approval Order.  *Id.* ¶11.

The claims process is also effective in that it includes a standard Claim Form which requests the information necessary to calculate a claimant's claim amount pursuant to the PwC Greece Plan of Allocation.  A.B. Data Decl. ¶2.

The PwC Greece Plan of Allocation will govern how Settlement Class Members' Claims will be calculated and, ultimately, how money will be apportioned and distributed to Authorized Claimants.  *See* Lavallee Decl. ¶¶10-13.[9]   The PwC Greece Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's careful analysis of the amount of

---

[8] Lead Plaintiff's damages consultant estimates total alleged damages for the May 17, 2017 to November 5, 2018 period were approximately $247.89 million.  *See* Lavallee Decl. ¶17.  As discussed in Section III.C.5, below, a partial recovery of $14.9 million therefore represents approximately 6.01% of the estimated total alleged damages, in line with median reported values for securities fraud class actions generally and exceeding the Second Circuit's median recovery of 4.7% of damages.  Lavallee Decl. ¶18 & Ex. 3.

[9] As set forth in the Notice, in order to avoid duplicative expenses to the Class, it is Lead Plaintiff's intention to delay payment of the PwC Greece Net Settlement Fund generated by the Partial Settlement until such time as there are additional funds available for distribution or a determination is made that no further funds will be available for distribution to the Settlement Class.

artificial inflation in the price of Aegean securities at various times during the Relevant Period.[10]   *See id.*

### (c)   Lead Plaintiff's Application for the Establishment of a Litigation Expense Fund is Reasonable

While Lead Plaintiff had negotiated a fee and expense agreement with Lead Plaintiff URS prior to the commencement of its involvement in the case, Lead Counsel is deferring its request for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25%, plus interest, until a later date. *See*, *e.g.*, Fed. R. Civ. P 23(e)(2)(C)(iii) (requiring the Court, as part of its overall analysis of the adequacy of a settlement, to consider the "terms of any proposed award of attorney's fees").   However, under the terms of the Partial Settlement and as described in the proposed Notice to be provided to Settlement Class Members, Lead Counsel requests only that the Court allow Lead Counsel to draw from the Settlement Fund to defray current and future Litigation Expenses, including necessary expenses and expert fees, of prosecuting claims asserted against the Non-Settling Defendants in an amount not to exceed $2 million ("Litigation Expense Fund").   Any amount of Litigation Expense Fund granted by the Court will be an advance of (and not in addition to) any final fee or expense awarded following resolution of all claims against Non-Settling Defendants.   The establishment of a Litigation Expense Fund in connection with a partial settlement of a class action is well accepted by Courts, including courts sitting in the Second Circuit.   *See In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288(DLC), 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (establishing a $5 million fund to finance the continued prosecution of the consolidated class action against the non-settling defendants); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *9  (S.D.N.Y. May 14, 2004) (establishing litigation fund and ordering that "Lead Counsel is permitted to draw against the Litigation Fund without further order of the Court to pay costs of the continued prosecution of the Action against" non-settling defendants); *In re Cal. Micro Devices Sec. Litig.,* 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving establishment of $1.5 million litigation fund "to pay the costs of pursuing the case against" non-settling defendants, noting

---

[10] The securities at issue in the Action and subject to the Partial Settlement include: (i) Aegean common stock; (ii) Aegean 4.00% Convertible Unsecured Senior Notes (the "4.00% Notes"); (iii) Aegean 4.25% Convertible Unsecured Senior Notes (the "4.25% Notes");  (iv) Aegean call options; and (v) Aegean put options, (collectively referred to as the "Aegean Securities").

"[b]ecause the remainder of the case appears to have potential value for the class, a litigation fund of the sort proposed here would serve the interests of class members"); *Newby v. Enron Corp.*, 394 F.3d 296, 303 (5th Cir. 2004) (upholding district court's creation of a litigation expense fund "as a sound exercise of discretion.").

### (d)   There Are No Side Agreements Other Than With Respect to Opt Outs

Rule 23(e)(2)(C)(iv) requires that the parties identify any side agreements.  The Parties have entered into a standard supplemental agreement that provides that if Class Members opt out of the Partial Settlement such that the number of Aegean Securities represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Partial Settlement.  Stipulation at ¶13.1. Agreements of this sort are typical in class settlements and Lead Plaintiff intends to submit this agreement *in camera*, *under seal* within one week.[11]  There are no other agreements between the Settling Parties.

### 4.   All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  "The proposed allocation need not meet the standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis."  *In re Par Pharm. Sec. Litig.*, No. 06-3226 ES, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013).  The proposed PwC Greece Plan of Allocation provides for distribution of the PwC Greece Net Settlement Fund to Settlement Class Members who allegedly had claims against PwC Greece who submit timely and valid Claim Forms demonstrating a loss on their transactions in Aegean Securities purchased or otherwise acquired after May 16, 2017 and held through at least one of the alleged corrective disclosures.  *See* Lavallee Decl. ¶¶10-13.

---

[11] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out"), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017); *see also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002) ("The notice did not need to include details such as . . . the confidential 'opt-out' threshold beyond which defendant reserved the right to withdraw from the settlement (irrelevant to members' opt-out decision)[.]"), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *Oasmia Pharm. AB*, 2021 WL 1259559, at *7 (noting the appropriateness of the parties' confidential supplemental agreement regarding opt-outs).

The formula to apportion the PwC Greece Net Settlement Fund among Settlement Class Members, which was developed in consultation with Lead Plaintiff's damages consultant, is based on the estimated amount of artificial inflation in the price of Aegean Securities over the course of the Settlement Class Period that was allegedly caused by the misrepresentations and omissions made in PwC Greece's audit opinion. *See* Lavallee Decl. ¶¶10-13. Further, the PwC Greece Plan of Allocation apportions the PwC Greece Net Settlement Fund among Settlement Class Members who allegedly had claims against the Settling Defendant based on when they purchased, acquired and/or sold Aegean Securities, and was created without consideration of Lead Plaintiff's individual transactions. This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained due to PwC Greece's alleged fraud, and eligible Settlement Class Members will receive a *pro rata* distribution from the PwC Greece Net Settlement Fund calculated in the same manner and that Lead Plaintiff's claim will not be afforded any preferential treatment. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 170 (S.D.N.Y. 2007) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is reasonable."); *see also In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (preliminary approval should be granted where "there is no evidence that the proposed settlement accords 'improper[ ] … preferential treatment' to any portion of the class'" (alteration in original) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *In re Refco, Inc. Sec. Litig.*, No. 05 CIV. 8626 (JSR), 2010 WL 11586941, at *6 (S.D.N.Y. May 11, 2010) (same). Accordingly, the proposed PwC Greece Plan of Allocation applies equitably to all eligible Settlement Class Members.

*     *     *

Thus, each factor identified under Rule 23(e)(2) is satisfied and, given the litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel, the $14,900,000 partial recovery is excellent.

### C.    The Remaining *Grinnell* Factors Further Support Preliminary Approval

As demonstrated above, the first, fourth and fifth *Grinnell* factors (the complexity, expense and likely duration of litigation, risks of establishing liability and risks of establishing damages) all lean in

14

favor of settlement. The totality of the remaining *Grinnell* factors lend further support and, considered collectively, should be considered dispositive.

### 1.      The Reaction of the Settlement Class to the Settlement

The second *Grinnell* factor—the reaction of the Class—is not yet ripe, as the Partial Settlement has not yet been presented to the Class. Neutral factors do not weigh against preliminary approval. *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (holding that "[a]ll nine [Grinnell] factors need not be satisfied"). However, URS, the institutional investor Lead Plaintiff and Class Representative believes the Partial Settlement is an excellent result for the Settlement Class.

### 2.      The Stage of the Proceedings

"The third *Grinnell* factor—'the stage of the proceedings and the amount of discovery completed'—is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Id.* As demonstrated above, the Settling Parties exhausted considerable resources investigating the claims and defenses at issue and briefing motions and oppositions to motions to dismiss. Further, Lead Counsel consulted with experts in the fields of market efficiency, loss causation, damages, accounting and international privacy law. Thus, even though formal discovery is just now commencing, at the time the Settling Parties commenced settlement negotiations, the parties were already well-positioned to weigh the strengthens and weaknesses of their respective positions. *See id*; *see also* Lavallee Decl. ¶¶5-8, 10-14; *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties.").

### 3. Defendants' Ability To Withstand A Greater Judgment

Although PwC Greece may be able to withstand a greater judgment (the seventh *Grinnell* factor),

where the other *Grinnell* factors weigh in favor of approval, this factor should not influence the overall

conclusion that the settlement is fair, reasonable and adequate.[12]

### 4. The Risk of Maintaining the Class Action Through Trial

The sixth *Grinnell* factor requires the Court to consider the risk of maintaining the class action

through trial. Though Lead Plaintiff is confident that it will prevail in moving for class certification, this

remains a risk that weighs in favor of settlement. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 104

(D.N.J. 2018). Thus, in the present case, where "the Class had yet to be certified and there is no guarantee

of success . . . the risks favor settlement." *Id.*

### 5. The Settlement Amount is Reasonable Considering The Range of Possible Recoveries

The eighth and ninth *Grinnell* factors support a finding that the Court likely will approve the

settlement. These factors call for the court to determine "the range of reasonableness of the settlement

fund in light of the best possible recovery [and] the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

Here, the $14.9 million settlement is an excellent preliminary settlement for eligible Settlement

Class members who allegedly have claims against PwC Greece. *See* Lavallee Decl. ¶¶10-20. For

example, Cornerstone Research's[13] data shows that the median settlement as a percentage of damages in

cases involving accounting issues (including GAAP violations, restatements and accounting irregularities)

between 2011 and 2020 was between 5.1% and 7.6%.[14] Cornerstone Research also estimates that median

---

[12] *See, e.g., Hi-Crush Partners*, 2014 WL 7323417, at *9 ("Courts … generally do not find the ability to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement.").

[13] Cornerstone Research provides economic and financial analysis in litigation and issues research reports on securities class actions and modeling settlement outcomes. In its reports, it applies what it refers to as "simplified tiered damages" as a measure of potential shareholder losses "that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends." *See* Lavallee Decl. Ex. 3 (Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021), also available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis), at 5.

[14] *Id.* at 9.

settlements as a percentage of "simplified tiered damages"[15] in Rule 10b-5 cases have ranged between 3.9% and 8.9% for cases with estimated damages of between $150 million to $249 million since 2011,[16] and  that the median settlement dollars for all securities fraud cases from 2016 to 2020 following rulings on motions to dismiss, but before rulings on class certification, is $6.1 million.[17]  *See also* Lavallee Decl. ¶10.

Here, Lead Plaintiff's damages consultant estimates that total alleged damages during the Relevant Period were approximately $247.89 million.  *See* Lavallee. Decl. ¶18.  A $14.9 million ***partial*** settlement therefore represents approximately 6.01% of the estimated total alleged damages for the Relevant Period (*id.*), in line with the median reported by Cornerstone Research and exceeds the Second Circuit's median recovery of 4.7% of damages.[18] Additionally, given the likelihood that not all Settlement Class Members will file claims, it is likely that the actual percentage of recovery will be even higher.

Moreover, it is worth noting that the Partial Settlement likely represents only the starting point of a recovery for the Settlement Class in this case.  Indeed, it is separate and apart from any judgment or settlement that Lead Plaintiff may achieve with the Non-Settling Defendants Dimitris Melissanidis, Spyros Gianniotis, Deloitte Greece and any other defendant(s) that may be later brought into the case.   In sum, the Settling Parties have demonstrated significant uncertainties and risks in continuing this litigation that lean in favor of approving the Partial Settlement.   Thus, the $14.9 million in cash recovery now, particularly when viewed in the context of the risks, costs, delay and uncertainties of further proceedings, weighs in favor of preliminary approval of the Partial Settlement.

## IV.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR THE PURPOSE OF THE PARTIAL SETTLEMENT

To grant preliminary approval of a proposed class settlement, a district court must also determine that the requirements for class certification under Rules 23(a) and (b) are met.  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  For that reason, and pursuant to the December 2018

---

[15] *Id.* at 5.

[16] *Id.* at 6.

[17] *Id.* at 14.

[18] Bulan & Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, *supra*, at 20.

Rule 23(e) amendments, it is proper for the Court to consider, at this stage, if the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy) are met, and the action qualifies under one of Rule 23(b)'s subdivisions (here, Rule 23(b)(3)).  *See* Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice to the class if "giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal").  As demonstrated below, the proposed Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

## A.    Numerosity

Under Rule 23(a), numerosity requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In cases like this one involving widely traded instruments, including Aegean common stock which was listed on the New York Stock Exchange, numerosity is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014) ("common sense assumptions … suffice to demonstrate numerosity"); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed if a class has over 40 members); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 460 (S.D.N.Y. 2018) (Buchwald, J.) (same).  Furthermore, in securities class actions "relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."  *Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656, at *2 (S.D.N.Y. May 12, 2021).

Lead Plaintiff easily establishes numerosity, as the proposed Class consists of thousands of members.   As of December 31, 2016, the float (shares outstanding) of Aegean's common stock was 39.40 million shares.  *See* Lavallee Decl. ¶12.   Thus, joinder of these thousands of Aegean investors would be impractical.  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 69-70 (S.D.N.Y. 2009).

## B.    Commonality and Typicality

Commonality and typicality are also satisfied.[19]   Under Rule 23(a)(2), commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality demands that

---

[19]   *See, e.g.*, *In re Grana y Montero S.A.A. Sec. Litig.*, No. 17-CV-01105 (LDH) (ST), 2021 WL 4173684, at *9

the class's claims 'depend upon a common contention ... capable of classwide resolution' such that 'its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Grana y Montero S.A.A.*, 2021 WL 4173684, at *9 (E.D.N.Y. Aug. 13, 2021) (alteration in original) (quoting *Dukes*, 564 U.S. at 350). Courts in securities class action cases have permissively applied the commonality requirement "in the context of securities fraud litigation" noting that "minor variations in the class members' positions will not suffice to defeat certification." *In re Facebook, Inc., IPO Sec. & Derivative Litig. (Facebook I)*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

The typicality inquiry "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *6D Glob. Techs., Inc.*, 2021 WL 1910656, at *2 (quoting *Giuliani*, 126 F.3d at 376); *see also Facebook I*, 312 F.R.D. at 343.

In this case, there are clear common questions of law and fact, namely, whether (i) Defendants violated the federal securities laws; (ii) whether Defendants' public statements during the Class Period misrepresented or omitted material facts; (iii) whether Defendants acted with scienter in issuing false and misleading statements; (iv) whether and to what extent the price of Aegean's Securities were artificially inflated by Defendants' false and misleading statements or omissions; and (v) whether the members of the putative Class suffered damages and what is the appropriate measure of those damages. Thus, the presence of these common questions of law and fact firmly establishes commonality. *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, No 3:17-cv-209-BRM-LHG, 2020 WL 502176, at *5 (D.N.J. Jan. 31, 2020) (commonality established where "[c]omplaint alleges a common course of conduct arising from materially false and misleading statements and omissions Defendants made to the investing public").

Likewise, Lead Plaintiff's claims are typical of the class. Lead Plaintiff's claims rest on the same course of events, including, as relevant here, that (a) Aegean's financial results were manipulated by

---

(E.D.N.Y. Aug. 13, 2021) ("The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites." (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997))), *report and recommendation adopted*, No. 17-CV-01105 (LDH) (ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021).

improperly booking approximately $200 million in accounts receivables from bogus transactions with four shell companies controlled by former employees or affiliates of the Company; (b) Aegean's assets and the balance sheet were grossly overstated because approximately $300 million in cash and assets had been misappropriated by former affiliates; (c) Aegean's Class Period financial statements were materially false, misleading and unreliable for the time periods of FYs ended December 31, 2013, 2014 and 2015 as were each of the Company's Quarterly Reports on Form 6-K for the respective interim reporting periods between March 31, 2010 and December 31, 2017; and (d) as a result, PwC Greece's May 16, 2017 clean Audit Opinion regarding Aegean's FY 2016 financials and the adequacy of the Company's ICFR was materially false and misleading.  *See* Compl. ¶¶160, 177, 221-27, 385, 429-32, 479.  These allegations are the same for each and every Settlement Class Member who purchased Aegean's Securities on or after May 17, 2017, after PwC Greece issued its audit opinion.  Thus, the claim of each Settlement Class Member who purchased Aegean Securities during the Relevant Period arises from the same course of events and each has identical legal arguments to prove PwC Greece's liability.  *See Diaz v. FCI Lender Servs., Inc.*, No. 17-CV-8686 (AJN), 2020 WL 4570460, at *2 (S.D.N.Y. Aug. 7, 2020); *see also In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658 SRC, 2013 WL 396117, at *5 (D.N.J. Jan. 30, 2013) (noting the interrelationship between commonality and typicality for purposes of class certification and settlement and finding that the lead plaintiff's claims "ar[o]se from the very same alleged Exchange Act violations as those that g[a]ve rise to the claims of the absent class members").

### C.    Adequacy of Representation

Rule 23(a)(4)'s adequacy requirement seeks to ensure that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy is met "if a plaintiff does not have interests antagonistic to those of the class, and if its chosen counsel is qualified, experienced, and able to conduct the litigation."  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

As detailed in the introductory section of this memorandum, Lead Plaintiff meets both prongs of the adequacy requirement here.  First, no conflicts of interest exist between either Lead Plaintiff and the Settlement Class Members, or Lead Counsel and the Settlement Class Members.  Lead Plaintiff and the

putative class members share the same interest in holding Defendants accountable for their misconduct, as Lead Plaintiff and the putative class members purchased Aegean common stock and were injured by the same materially false and misleading statements and omissions.  This identical interest satisfies Rule 23's adequacy requirement.[20]   Moreover, Lead Plaintiff is an institutional investor that has exhibited, and will continue to exhibit, commendable knowledge and direction of the litigation for the benefit of the Class.  *See Barclays PLC*, 310 F.R.D. at 100 (appointing plaintiffs who "actively supervised and monitored the progress of this litigation, and will continue to actively participate in its prosecution"). Second, both counsel for Lead Plaintiff and counsel for Defendants frequently litigate securities fraud matters and have the necessary expertise to identify the underlying wrongdoing, bring litigation in a representative capacity and negotiate the proposed Partial Settlement.  Thus, the adequacy of representation in this matter is unquestioned.

### D.    Rule 23(b)(3) Factors

Lead Plaintiff seeks class certification for purposes of the Partial Settlement pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both the predominance and superiority requirements are met here.

#### 1.    Predominance

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual class members.  Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Grana y Montero S.A.A.*, 2021 WL 4173684, at *10.

---

[20] *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SD, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020) (finding adequacy met where "Lead Plaintiff ha[d] claims that [we]re typical of and coextensive with those of other Class Members and ha[d] no interests antagonistic to those of other Class Members").

The Second Circuit has recognized that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Am. Int'l Grp., Inc.*, 689 F.3d at 240. Here, as discussed *supra*, the elements of a Section 10(b) claim Lead Plaintiff must establish are: "(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460-61 (2013). Significantly, the Supreme Court has held that because falsity, scienter, materiality, and loss causation are common merits issues in a securities fraud class action, proof of those elements is not a prerequisite to class certification. *See id.* at 467 ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)" and not a prerequisite to class certification) (alteration in original). Thus, the only issues that would be distinct for Lead Plaintiff and each Settlement Class Member would be the amount of damages owed. However, individualized damages determinations alone cannot preclude class certification under the predominance inquiry. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015); *see also 6D Glob. Techs., Inc.,* 2021 WL 1910656, at *2 ("The focus of the predominance inquiry is on defendants' liability, not on damages."). Thus, Lead Plaintiff satisfies the predominance requirement because liability questions common to the Settlement Class substantially outweigh any possible individual issues.

### 2. Superiority

In addition to the predominance inquiry, Rule 23(b)(3) permits certification where a class action is superior to other available methods of adjudication. *See Refco, Inc.*, 2010 WL 11586941, at *11; *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 607 (1997). In the settlement context, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial." *Id.* at 620. "Generally, securities actions easily satisfy the superiority requirement because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Gruber v. Gilbertson*, No. 16-cv-9727-JSR, 2019 WL 4439415, at *9 (S.D.N.Y. Sept. 17, 2019), *modified*, No. 16-CV-09727-JSR, 2021

WL 3524089 (S.D.N.Y. Aug. 10, 2021); *see also In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 103 (S.D.N.Y. 2016).  This case is no different.

As set forth above, the Settlement Class here consists of a large number of geographically dispersed investors whose individual damages would likely be small enough to render individual litigation prohibitively expensive.  Thus, Class Members are unlikely to litigate on an individual basis.  Accordingly, "in light of the efficiencies of class wide adjudication" superiority in this case is easily met.  *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 144 (S.D.N.Y. 2019).

## V.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND APPOINT A.B. DATA AS CLAIMS ADMINISTOR

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]."  Fed. R. Civ. P. 23(e)(1).  Generally, notice is reasonable if the average class member understands the terms of the proposed settlement and the options provided to class members thereunder.  *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir.2005)).

In this case, Lead Counsel requests the Court appoint A.B. Data as Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms and to administer the Partial Settlement.  *See* Lavallee Decl. ¶21 & Ex. 4.  As set forth in the A.B. Data Declaration, A.B. Data is a well-regarded class action claims administrator with significant experience in securities class action claims administration.  A.B. Data Decl. ¶3 & Ex A.

With respect to cases filed under the PSLRA, the settlement notice must include: (a) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (b) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (c) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (d) the name, telephone number, and address

of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement; (e) a brief statement explaining the reasons why the parties are proposing the settlement; and (f) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Lavallee Decl. Ex. 1, at Ex. A-1 (Notice). The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to object to any aspect of the Partial Settlement, the PwC Greece Plan of Allocation, or the expense application. Furthermore, the Notice provides recipients with the contact information for the Claims Administrator and Lead Counsel.

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing, as set forth in the Preliminary Approval Order filed herewith:

| EVENT | PROPOSED TIMING |
|---|---|
| Notice mailed to the Settlement Class (the "Notice Date") | 21 calendar days after the Preliminary Approval Order is entered |
| Summary Notice published | 7 calendar days from the Notice Date |
| Date by which to file papers in support of the proposed Partial Settlement, PwC Greece Plan of Allocation and application for the establishment of a Litigation Expenses Fund | 35 calendar days prior to the Settlement Hearing |
| Last day for Settlement Class Members to opt-out or object to the proposed Partial Settlement | 21 calendar days prior to the Settlement Hearing |
| Date by which to file reply papers in response to objections or comments to the proposed Partial Settlement, PwC Greece Plan of Allocation, or application for the establishment of a Litigation Expenses Fund | 7 calendar days prior to the Settlement Hearing |
| Last day for Settlement Class Members to file Proof of Claim and Release forms | 120 days from the Notice Date |
| Settlement Hearing Date | No earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. |

VII.    **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order.

Dated: November 9, 2021                    Respectfully submitted,

**BERMAN TABACCO**

By:    _/s/ Nicole Lavallee_
           Nicole Lavallee (admitted *pro hac vice*)

Joseph J. Tabacco, Jr. (JT1994)
Christopher T. Heffelfinger (admitted *pro hac vice*)
Kristin Moody (admitted *pro hac vice*)
A. Chowning Poppler (admitted *pro hac vice*)
Jeffrey Rocha (*pro hac vice* forthcoming)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  jtabacco@bermantabacco.com
           nlavallee@bermantabacco.com
           cheffelfinger@bermantabacco.com
           kmoody@bermantabacco.com
           cpoppler@bermantabacco.com
           jrocha@bermantabacco.com

*Counsel for Lead Plaintiff Utah Retirement Systems*