UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AEGEAN MARINE PETROLEUM NETWORK, INC. SECURITIES LITIGATION | Case No. 1:18-cv-04993 (NRB)<br><br>Hon. Naomi Reice Buchwald |

**DECLARATION OF NICOLE LAVALLEE IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF PROPOSED PARTIAL CLASS ACTION SETTLEMENTS WITH PRICEWATERHOUSECOOPERS AUDITING COMPANY S.A. AND DELOITTE CERTIFIED PUBLIC ACCOUNTANTS, S.A.; (II) PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

I, Nicole Lavallee, declare:

1. I am a partner in the San Francisco office of Berman Tabacco, the Court-appointed Lead Counsel for Lead Plaintiff Utah Retirement Systems ("Lead Plaintiff" or "URS") and the proposed class counsel in the above-captioned matter. As a result of my own substantial involvement in this litigation, I have personal knowledge of the facts set forth in this declaration. I submit this declaration in support of Lead Plaintiff's Unopposed Motion For (i) Preliminary Approval of Proposed Partial Class Action Settlements with PricewaterhouseCoopers Auditing Company S.A. and Deloitte Certified Public Accounts, S.A.; (ii) Preliminary Certification of Settlement Class; and (iii) Approval of Notice to the Settlement Class.[1]

---

[1] All capitalized terms not otherwise defined herein have the same meaning as in the Notice of (i) Pendency of Class Action and Proposed Partial Settlements; and (ii) Final Approval Hearing For The Partial Settlements, Plans of Allocation, Motion For Approval of Attorneys' Fees and Reimbursement of Litigation Expenses and Application For The Establishment of a Litigation Expense Fund (the "Omnibus Notice"). Identical copies of the Omnibus Notice are attached as: (a) Exhibit A-1 to the March 22, 2022 Amendment to the PricewaterhouseCoopers Auditing Company S.A. Stipulation and Agreement of Partial Settlement Dated November 9, 2021("PwC Greece Stipulation Amendment"); and (b) Exhibit A-1 to the March 24, 2022 Stipulation and Agreement of Partial Settlement with Deloitte Certified Public Accountants, S.A. (the "Deloitte Greece Stipulation"). True and correct copies of the PwC Stipulation Amendment and the Deloitte Greece Stipulation are attached hereto as **Exhibit 1** and **Exhibit 3**, respectively.

1

2. The purpose of this declaration is to summarize the factual and procedural history of this Action, including the investigation and filing of this litigation, motion to dismiss proceedings, settlement negotiations and the Partial Settlements.

3. This matter commenced on June 5, 2018 with the filing of the initial complaint, styled as *Simco v. Aegean Marine Petroleum Network, Inc., et al.*, No. 1:18-cv-04993-NRB. ECF No. 1.

4. On October 30, 2018, the Court appointed URS as Lead Plaintiff and approved its selection of Berman Tabacco as Lead Counsel. ECF No. 69. Lead Plaintiff URS is a public pension fund with over $40 billion in assets under management that is responsible for investing and managing the retirement funds of thousands of public employees throughout the state of Utah. Berman Tabacco is highly experienced in class action litigation and has four decades of experience prosecuting complex securities fraud class actions, as evidenced by Berman Tabacco's resume, a true and copy of which is attached hereto as **Exhibit 4**.

5. Berman Tabacco has prosecuted and will continue to prosecute this Action vigorously on behalf of Lead Plaintiff and the proposed Settlement Class, representing the interests of the Settlement Class fairly and adequately, and will continue to commit the resources necessary to pursue the claims against all Non-Settling Defendants on behalf of members of the Settlement Class. Lead Plaintiff takes its fiduciary duties very seriously and has carefully monitored and will continue to monitor the litigation by working closely with Lead Counsel.

6. On February 1, 2019, after extensive investigation by Lead Counsel, Lead Plaintiff filed its Consolidated Class Action Complaint ("Complaint") alleging violations of various provisions of the Securities and Exchange Act of 1934 ("Exchange Act"). ECF No. 81. The claims were asserted against Dimitris Melisanidis ("Melisanidis"), Spyros Gianniotis ("Gianniotis"), PricewaterhouseCoopers Auditing Company S.A. ("PwC Greece"), PricewaterhouseCoopers International Limited ("PwCIL"), PricewaterhouseCoopers LLP ("PwC US"), Deloitte Certified Public Accountants, S.A. ("Deloitte Greece"), Deloitte Touche Tohmatsu Limited ("DTTL") and Deloitte & Touche LLP ("Deloitte US") and certain other officers and directors of Aegean Marine Petroleum Network, Inc. ("Aegean" or the "Company"). While Aegean was initially named as a defendant in the first-filed case, it was not named

as a defendant in the Complaint because it filed a Petition for Relief Under Chapter 11 of the Bankruptcy Code in November 2018, which operated as a stay against the continuation of litigation against it.

7. Lead Plaintiff, through Lead Counsel, undertook a thorough investigation and subsequent prosecution of this Action, which included, *inter alia*: (a) research and investigation of the claims, as well as potential issues arising from the fact that Aegean and many of the Defendants and documents were located in Greece; (b) detailed reviews of Aegean's public U.S. Securities and Exchange Commission ("SEC") filings, annual reports, press releases, earnings calls and other publicly available information spanning over a decade; (c) review of analysts' reports and articles relating to Aegean; (d) work with our investigative staff to uncover relevant facts; (e) research and analysis of documents filed in connection with several court cases involving Aegean and/or the Defendants, including various pleadings and discovery filed in the Aegean Bankruptcy proceedings and pleadings filed in cases here in the U.S. and overseas; (f) extensive consultation and analysis with forensic accounting consultants; (g) consultation and analysis with damages consultants and international privacy law consultants; (h) extensive briefing to oppose Defendants' motions to dismiss; (i) consultations with Greek counsel; and (j) commencement of discovery.

8. In addition, working with bankruptcy counsel, Berman Tabacco (a) opposed the efforts during the bankruptcy proceedings to release all investors' claims under the federal securities laws, which would have included those against other third parties such as the Settling Defendants; (b) obtained a Court-approved carve-out of the Settlement Class Members' claims from the proposed sweeping release language; and (c) obtained modifications to the plan of reorganization, preserving Lead Plaintiff's right to assert its claims to the proceeds from the D&O policies, which insurance would be applicable to claims against certain of Aegean's officers and directors, such as Gianniotis.

9. In the Spring of 2020, each of the named defendants filed motions to dismiss the claims asserted against them. Of relevance here, PwC Greece and Deloitte Greece filed a joint motion to dismiss the Complaint on March 6, 2020. ECF Nos. 187-88. Moreover, Deloitte US and PwC US filed separate motions to dismiss the Complaint with a joint memorandum of law in support (ECF Nos. 180, 182, 184), and DTTL filed a joint motion to dismiss the Complaint along with PwCIL (ECF Nos. 191-

3

92). Lead Plaintiff opposed the various motions to dismiss on June 30, 2020. ECF Nos. 239-51. Defendants filed their respective replies on August 20, 2020 (ECF Nos. 261-74) and a hearing was held on March 9, 2021.

10. On March 29, 2021, the Court issued an order that denied PwC Greece and Deloitte Greece's joint motion to dismiss. ECF No. 293. In the same order, the Court (a) denied the motion by Gianniotis to dismiss the sections 10(b), 20(b) and 20A claims asserted against him; (b) denied, in part, the motion to dismiss filed by Melisanidis by upholding the Section 20A claim against him; and (c) granted the motions to dismiss filed by several other defendants, including the joint motion filed by PwCIL and DTTL, and the motions filed by PwC US and Deloitte US. ECF No. 293.

11. On July 12, 2021, Defendants filed their answers. ECF Nos. 300-04. Initial disclosures were exchanged on September 2, 2021 and September 3, 2021 and the parties submitted a Joint Report of Rule 26(f) Conference and Proposed Discovery Plan on September 14, 2021. In response to the Court's October 7, 2021 letter, the Parties submitted a further Joint Report on November 5, 2021. Discovery is ongoing as to the Non-Settling Defendants.

12. In Summer 2021, counsel for Lead Plaintiff and PwC Greece's Counsel began good-faith, arm's-length, negotiations with an eye toward reaching a potential settlement which would release claims against PwC Greece and the PwC Greece Released Parties. In particular, the negotiations of the PwC Greece Settlement involved several months of direct communication between highly experienced securities litigators, Joseph J. Tabacco, Jr. of Berman Tabacco[2] on behalf of Lead Plaintiff, and Michael Bongiorno of WilmerHale[3] on behalf of PwC Greece, each of whom has decades of securities litigation class action experience.

13. On August 26, 2021, following numerous rounds of negotiation, an agreement in principle was reached to settle all claims asserted by Lead Plaintiff in this this Action against PwC Greece for the exchange of mutual releases, $14.9 million in cash and an agreement by PwC Greece to produce

---

[2] *See* https://www.bermantabacco.com/professionals/joseph-tabacco.
[3] *See* https://www.wilmerhale.com/en/people/michael-bongiorno.

relevant documents, including audit workpapers, in a form and manner that renders them authentic business records. A true and correct copy of the PwC Greece Stipulation is attached hereto as **Exhibit 2**.

14. On November 9, 2021, Lead Plaintiff filed a motion for preliminary approval of the PwC Greece Settlement (the "November 2021 Motion"). ECF Nos. 327-30. This November 2021 Motion provided, among other things, that distribution of the PwC Greece Settlement Fund and a motion for attorneys' fees and reimbursement of Litigation Expenses would be delayed until a later date, such as when further settlements were reached. *Id*.

15. In Fall 2021, counsel for Lead Plaintiff and Deloitte Greece's Counsel likewise began good-faith negotiations with an eye toward reaching a potential settlement which would release claims against Deloitte Greece and the Deloitte Greece Released Parties. In particular, the negotiations of the Deloitte Greece Settlement involved several months of direct communication between highly experienced securities litigators, Joseph J. Tabacco, Jr. of Berman Tabacco, on behalf of Lead Plaintiff, and Thomas N. Kidera of Orrick, Herrington & Sutcliffe LLP[4] on behalf of Deloitte Greece, who is similarly highly experienced with over a decade of securities litigation class action experience.

16. On December 22, 2021, following numerous rounds of negotiation, an agreement in principle was reached to settle all claims asserted by Lead Plaintiff in this Action against Deloitte Greece for the exchange of mutual releases, $14.9 million in cash and an agreement by Deloitte Greece to produce relevant documents, including audit workpapers, in a form and manner that renders them authentic business records. A true and correct copy of the Deloitte Greece Stipulation is attached hereto as **Exhibit 3** (Exhibits A-1, A-2 and A-3 to the Deloitte Greece Stipulation are identical to those attached to the PwC Greece Stipulation Amendment).

17. Lead Counsel had initially planned to delay the distribution of the PwC Greece Settlement Fund and the filing of the motion for attorneys' fees and reimbursement of Litigation Expenses to reduce the claims administration costs. However, now that a second proposed settlement has been reached, Lead Plaintiff and Lead Counsel determined that (a) it is ripe to distribute the Partial

---

[4] *See* https://www.orrick.com/en/People/E/3/B/Thomas-Kidera.

Settlement Funds after final approval of these Partial Settlements and for Lead Counsel to move for approval of attorneys' fees and reimbursement of Litigation Expenses when seeking final approval of these proposed Partial Settlements; and (b) it is in the best interests of the Settlement Class to reduce costs by issuing one joint Omnibus Notice, publishing one Summary Notice for both settlements and distributing one Claim Form. As a result, Lead Counsel and PwC Greece executed the PwC Greece Stipulation Amendment to reflect these changes to certain exhibits to the PwC Greece Settlement, namely the proposed PwC Greece Preliminary Approval Order, the Omnibus Notice, the Summary Notice, and the Claim Form. Thus, this motion filed herewith supersedes the November 2021 Motion. As noted, a true and correct copy of the PwC Greece Stipulation Amendment is attached hereto as **Exhibit 1**.

18.     As noted, each of the attorneys involved in the negotiation and settlement process had the requisite skill, knowledge and experience to evaluate the merits of the Partial Settlements. In addition, staff counsel for URS was intimately involved and in frequent consultation with Lead Counsel at every material step of the settlement negotiations and with respect to the instant motion before the Court.

19.     Given the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict, Lead Counsel and Lead Plaintiff believe that the proposed Partial Settlements are fair, reasonable, adequate and in the best interest of the Settlement Class.

20.     Indeed, while Lead Plaintiff and Lead Counsel believe that the claims asserted against the Settling Defendants have merit, they recognize the risks and challenges to establishing liability against the Settling Defendants (including falsity, materiality, scienter and loss causation), particularly since the Settling Defendants are two foreign, outside auditors.

21.     Here, the Settling Defendants have contended in their motion to dismiss and answers, *inter alia*, that Lead Plaintiff cannot establish its liability for a variety of reasons: (a) Aegean management was responsible for the preparation of Aegean's financial statements, and the Settling Defendants relied on management's representations; (b) the fraud was concealed from them because Aegean's insiders were involved in fraudulent accounting entries and fictitious documentation designed to conceal the fraud,

including by falsifying and forging bank statements, audit confirmations, contracts, invoices and third-party certifications; (c) the red flags alleged in the Complaint were either unknown to them or widely known and insufficient to put them on notice that Aegean was engaged in fraud; (d) they lacked the requisite intent and conducted their audits in accordance with the applicable standards of their profession; and (d) their audit opinions were mere statements of opinion that are only actionable if it is established that they believed that their opinions were false or their statements omitted material information rendering their audits misleading. *See, e.g.*, ECF No. 188 at 11-34, 39-40; ECF No. 301 (6th, 8th, 10th, 12th, 17th, 19th-23rd, 34th-36th, 41st, 42nd Affirm. Defenses); ECF No. 302 (1st, 4th, 5th, 7th-8th, 10th, 13th, 15th-18th, 20th, 26th, 27th-30th, 32nd, 36th Affirm. Defenses).

22.     The Settling Defendants also assert that, even if liable, Aegean insiders would be far more liable given Aegean's that records had been falsified and that the Settlement Class relied on the insiders, not the Settling Defendants. ECF No. 301 (19th-21st Affirm. Defenses); ECF 302 (13th 15th-18th, 29th-30th-32nd Affirm. Defenses). In addition, the Settling Defendants also have contended that all or a portion of the alleged damages to the Settlement Class were caused by factors other than their allegedly false or misleading statements or omissions and that such damages are thus not recoverable. *Id.*

23.     Moreover, each of the Settling Defendants has raised arguments specific to themselves. Deloitte Greece has asserted, for example, that many of the alleged red flags only appeared after it audited Aegean's 2015 year-end financials and that it was not liable to investors who purchased Aegean Securities after PwC Greece issued its audit opinion for Aegean's 2016 year-end financials. ECF No. 302 (18th, 30th, 36th Affirm. Defenses). It also would have argued that claims related to purchases prior to the issuance of its audit opinion for FY 2013 were time-barred, thereby limiting the members of the Settlement Class who would be entitled to recovery from them even if deemed liable. ECF No. 302 (27th, 36th Affirm. Defenses). Meanwhile, PwC Greece would have argued that the fraud had been ongoing for years prior to its auditing work for Aegean and, thus, it bore little to no liability. ECF No. 301 (20th, 22nd, 41st-42nd Affirm. Defenses).

24.     Lead Plaintiff and Lead Counsel also considered the difficulties in establishing liability against foreign nationals and the substantial risks, burdens and expenses involved in further litigation of

7

this Action through trial and appeals against the Settling Defendants, including challenges (a) gathering documentary evidence, much of which would have been written in Greek and located in Greece; (b) the fact that Defendants and others would have asserted privileges under Europe's recently enacted privacy and security law, the General Data Protection Regulation (GDPR), to try to withhold or redact documents; (c) the costly and time-consuming nature of translating relevant documents obtained in discovery and deposing witnesses abroad, including through the Hague Convention; and (d) the difficulty of enforcing any judgment obtained against foreign defendants.  Thus, the foreign nature of these proceedings raises an additional barrier not usually confronted in complex securities litigation with U.S.-based companies, defendants and auditors and is an additional "weight on the scale" in favor of approval of the instant motion.

25. Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues ranging from accounting, loss causation and damages.  If the trier of fact finds Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims against PwC Greece and/or Deloitte Greece.

26. In addition, Lead Plaintiff and Lead Counsel considered the other attendant risks of litigating a complex securities class action, including (a) the possibility that a class may not be certified; (b) a possible adverse judgment; (c) discovery disputes; (d) disputes between experts on complex financial and accounting matters as well as loss causation and damages; (e) a lengthy trial; and (f) appeals. In evaluating the settlement of securities class actions, courts repeatedly recognize that such litigation is complex, uncertain and costly.

27. Given the foregoing, Lead Plaintiff and Lead Counsel believe that the proposed Partial Settlements are fair, reasonable and adequate, and in the best interests of the Settlement Class.  Lead Plaintiff and Lead Counsel believe that the Partial Settlements provide a substantial benefit now: namely, the payment of $29.8 million ($14.9 million from each Settling Defendant) (less the various deductions described in the Omnibus Notice), as well as the agreement of the Settling Defendants to provide audit workpapers.

28. The Partial Settlement Amount here is particularly significant in comparison with typical auditor settlement amounts. A study of auditor settlements from 1996-2016 found that the mean auditor settlement value was $8.44 million. *See* Colleen Honigsberg, Shivaram Rajgopal & Suraj Srinivasan, *The Changing Landscape of Auditors' Liability*, 63 J.L. & Econ. 367, 387-88 (2020). Thus, when compared to the risk that the claims asserted in the Complaint would produce a similar, smaller or no recovery after summary judgment, trial and appeals, possibly years in the future, the Partial Settlements are adequate.

29. Here, Lead Plaintiff's damages consultant estimates that total alleged Section 10(b) damages for purchases of the Aegean common stock and notes were approximately $349.6 million for the entire Settlement Class Period. Thus, the $29.8 million total proposed Partial Settlements, represents approximately 8.5% of the estimated total alleged damages.

30. These Partial Settlements are well within the reported values for securities fraud class actions. For example, Cornerstone Research's data[5] shows that the median settlement as a percentage of damages in cases involving accounting issues (including GAAP violations, restatements and accounting irregularities) between 2011 and 2020 was between 5.1% and 7.6%. Ex. 5, at 9. Cornerstone Research also estimates that median settlements as a percentage of "simplified tiered damages" in Rule 10b-5 cases since 2011 have ranged between 3.9% and 4.3% for cases with estimated damages of between $250 million to $499 million and that the median settlement dollars for all securities fraud cases from 2016 to 2020 following rulings on motions to dismiss, but before rulings on class certification, is $6.1 million. *Id*. at 6 & 14. Moreover, the Second Circuit's median recovery is 4.7% of damages according to the same report.[6] *Id*. at 20.

31. Additionally, the Partial Settlements are separate and apart from any judgment or settlement that Lead Plaintiff may achieve with the Non-Settling Defendants Melisanidis and Gianniotis, and any other defendant(s) that may be later brought into the case.

---

[5] A true and correct copy of an excerpt from Cornerstone Research's *Securities Class Action Settlements: 2020 Review and Analysis*, authored by Laarni T. Bulan and Laura E. Simmons and issued in 2021, is attached hereto as **Exhibit 5**.

[6] In its reports, it applies what it refers to as "simplified tiered damages" as a measure of potential shareholder losses "that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends."

32.     In sum, it is the belief of Lead Counsel and Lead Plaintiff that the $29.8 million in cash recovery now ($14.9 million each from PwC Greece and Deloitte Greece), particularly when viewed in the context of the risks, costs, delay and uncertainties of further proceedings, weighs in favor of preliminary approval of the Partial Settlements.

33.     Lead Counsel also worked closely with its damage consultant to prepare the PwC Greece Net Settlement Fund (the "PwC Greece Plan of Allocation") and the Deloitte Greece Net Settlement Fund (the "Deloitte Greece Plan of Allocation"),[7] which are each described in the Omnibus Notice.

34.     There are two separate Plans of Allocation here because the PWC Greece Settlement Fund is only for the benefit of Settlement Class Members who purchased shares between May 17, 2017 and November 5, 2018 whereas the Deloitte Greece Settlement Fund is on behalf of all Settlement Class Members.  Indeed, because PwC Greece is not alleged to have issued any false or misleading statements until May 16, 2017, there could be no alleged recognized losses attributable to PwC Greece for securities purchased prior to the issuance of PwC Greece's May 16, 2017 audit opinions.  By contrast, because Deloitte Greece is alleged to have issued false or misleading statements starting prior to the Settlement Class Period, Settlement Class Members allegedly have recognized losses attributable to Deloitte Greece for Aegean Securities purchased throughout the Settlement Class Period.  Accordingly, Settlement Class Members who purchased Aegean Securities before May 17, 2017 will only be entitled to participate in the Deloitte Greece Settlement whereas Settlement Class Members who purchased Aegean Securities after May 16, 2017 will be entitled to participate in both the PwC Greece Settlement and the Deloitte Greece Settlement.

35.     Under the Plans of Allocation, the Net Settlement Funds will be distributed to Authorized Claimants on a *pro rata* basis, based on the relative size of their Recognized Claims, taking into account when they purchased, acquired and/or sold Aegean Securities.  Specifically, a "Distribution

---

[7] Together, the PwC Greece Plan of Allocation and the Deloitte Greece Plan of Allocation will be referred to herein as the "Plans of Allocation."  Similarly, when referenced together, the PwC Greece Net Settlement Fund and the Deloitte Greece Net Settlement Fund will be referred to herein as the "Net Settlement Funds."

10

Amount" will be calculated for each Authorized Claimant, which will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amounts in the Net Settlement Funds. If any Authorized Claimant's Distribution Amount calculates to less than $10, it will not be included in the calculation and no distribution will be made to that Authorized Claimant. The computations under the Plans of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making *pro rata* allocations of the Net Settlement Funds. Thus, I am informed and believe that the Plans of Allocation provide an equitable and reasonable method for calculating an Authorized Claimant's Recognized Loss Amount and distributing the Net Settlement Funds among Authorized Claimants who suffered economic losses as a result of PwC Greece's and/or Deloitte Greece's alleged fraud.

36. In developing the Plans of Allocation, Lead Plaintiff's damages consultant calculated the estimated amount of alleged artificial inflation in each of the Aegean Securities purchased or acquired within the Settlement Class Period that were allegedly proximately caused by PwC Greece's and Deloitte Greece's alleged misconduct. They apportioned the PwC Greece Net Settlement Fund and the Deloitte Greece Net Settlement Fund equitably among Settlement Class Members.

37. In this Action, Lead Plaintiff alleges that the corrective information (referred to as a "corrective disclosure") related to the claims asserted against PwC Greece was released to the market on February 20, 2018; June 4, 2018; November 2, 2018; and November 6, 2018, thereby impacting the prices of Aegean Securities on February 21, 2018; February 22, 2018; June 5, 2018; November 5, 2018; November 6, 2018; and November 7, 2018. Thus, in order to have a "Recognized Loss Amount" under the PwC Greece Plan of Allocation for the PwC Greece Settlement, Aegean Securities must have been purchased or otherwise acquired during the period between May 17, 2017 and November 5, 2018, inclusive ("PwC Greece Relevant Period"), and held through the issuance of at least one corrective disclosure.

38. Lead Plaintiff alleges that the corrective disclosure related to the claims asserted against Deloitte Greece was released to the market on December 14, 2016; February 20, 2018; June 4, 2018; November 2, 2018; and November 6, 2018; thereby impacting the prices of Aegean Securities on

December 14, 2016; February 21, 2018; February 22, 2018; June 5, 2018; November 5, 2018; November 6, 2018; and November 7, 2018. Thus, in order to have a "Recognized Loss Amount" under the Deloitte Greece Plan of Allocation for the Deloitte Greece Settlement, Aegean Securities must have been purchased or otherwise acquired at any point during the Settlement Class Period (during the period between February 27, 2014 and November 5, 2018, inclusive) and held through the issuance of at least one corrective disclosure.

39. After a competitive bidding process, Lead Plaintiff has retained an experienced Claims Administrator, A.B. Data, Ltd, subject to Court approval. *See* Declaration of Eric Schachter of A.B. Data, Ltd. Regarding Notice and Administration, a true and correct copy of which is attached hereto as **Exhibit 6**.

40. At the Final Approval Hearing, Lead Counsel will also seek attorney's fees in an amount not to exceed 25% and reimbursement of Litigation Expenses up to $380,000. This 25% fee request is consistent with the fee agreement between Lead Counsel and URS entered into at the outset of the litigation.

41. At the Final Approval Hearing, Lead Counsel *may* also request that a Litigation Expense Fund be established from the Partial Settlement Funds to offset future expenses. Any amount of Litigation Expense Fund requested and granted by the Court will be an advance of (and not in addition to) any final expense awarded following resolution of all claims against Non-Settling Defendants. Because it is unclear whether one or both Partial Settlements will be approved by the Court, each of the Partial Settlement Stipulations provide that Lead Plaintiff may request up to $2 million from its Settlement Fund. However, if Lead Counsel requests that a Litigation Expense Fund be established, it will seek no more than $2 million in total for this purpose.

42. I have been informed by both PwC Greece's Counsel and Deloitte Greece's Counsel that neither PwC Greece nor Deloitte Greece oppose this motion. Both PwC Greece and Deloitte Greece take no position on any of the calculations contained in this declaration and the attachments hereto, including Lead Counsel's calculations of likely recoverable damages under the Plans of Allocation, average distribution per share or attorneys' fees per share.

43. Attached hereto are true and correct copies of the following documents:

   a. **Exhibit 1**: PwC Greece Stipulation Amendment dated March 24, 2022;

      i. **Exhibit A**: PwC Greece Preliminary Approval Order;

         1. **Exhibit A-1**: Omnibus Notice;

         2. **Exhibit A-2**: Proof of Claim and Release Form;

         3. **Exhibit A-3**: Summary Notice;

   b. **Exhibit 2**: PwC Greece Stipulation dated November 9, 2021

      i. **Exhibit A**: PwC Greece Preliminary Approval Order[8] (*superseded*);

         1. **Exhibit A-1**: Notice (*superseded*);

         2. **Exhibit A-2**: Proof of Claim and Release Form (*superseded*);

         3. **Exhibit A-3**: Summary Notice (*superseded*);

      ii. **Exhibit B**: [Proposed] Final Judgment and Order of Dismissal With Prejudice Regarding PwC Greece;

   c. **Exhibit 3**: Deloitte Greece Stipulation dated March 24, 2022;

      i. **Exhibit A**: Deloitte Greece Preliminary Approval Order;

         1. **Exhibit A-1**: Omnibus Notice[9];

         2. **Exhibit A-2**: Proof of Claim and Release Form;

         3. **Exhibit A-3**: Summary Notice;

      ii. **Exhibit B**: [Proposed] Final Judgment and Order of Dismissal With Prejudice Regarding Deloitte Greece;

   d. **Exhibit 4**: Firm resume of Berman Tabacco;

   e. **Exhibit 5**: Excerpts of Bulan & Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021); and

---

[8] Exhibits A, A-1, A-2 and A-3 to the PwC Greece Stipulation are superseded by Exhibits A, A-1, A-2 and A-3 to the PwC Greece Stipulation Amendment *supra*.

[9] Exhibits A-1, A-2 and A-3 to the Deloitte Greece Preliminary Approval Order (Ex. A to **Exhibit 3** hereto) are identical to Exhibits A-1, A-2 and A-3 to the PwC Greece Preliminary Approval Order attached to PwC Greece Stipulation Amendment (Ex. A to **Exhibit 1** hereto), and reflect the Partial Settlements with both PwC Greece and Deloitte Greece. As noted in note 8, *supra*, these exhibits supersede those filed with the November 2021 Motion.

    f.  **Exhibit 6**: Declaration of Eric Schachter of A.B. Data, Ltd. Regarding Notice and Administration.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at San Francisco, California, on March 24, 2022.

                */s/ Nicole Lavallee*
                Nicole Lavallee