UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AEGEAN MARINE PETROLEUM NETWORK, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) |  Case No. 1:18-cv-04993 (NRB)<br><br>Hon. Naomi Reice Buchwald |

## JOINT DISCOVERY PROTOCOL AND [PROPOSED] ORDER

Lead Plaintiff Utah Retirement Systems and Defendants Dimitris Melissanidis and Spyros Gianniotis (together, the "Parties")[1] hereby stipulate to the following Joint Discovery Protocol ("Protocol"):

**A.     Cooperation**

1.     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this action.  The Parties agree to meet and confer on any discovery disputes relevant to the matter, and either party may seek Court assistance to resolve any dispute.

2.     Nothing contained in this Protocol operates either as a waiver or relinquishment of a right by any party to assert application of the European Union's General Data Protection Regulation ("GDPR") or other applicable foreign data privacy laws, including Greek data privacy laws (collectively, "Privacy Laws") or any party's assertion of any purported obligations under such Privacy Laws, nor does this Protocol operate as a waiver or relinquishment by any party to contend that such Privacy Laws do not apply to the discovery sought or as a waiver or relinquishment by any party to object to any party's assertion of their purported obligations under such Privacy Laws.  By signing on to this Protocol, Defendants in no way agree that this Protocol (a) absolves the Parties or any nonparties of any obligations they have to comply with the Privacy Laws, or (b) supersedes any provisions in the Privacy Laws.  Defendants instead assert that the Parties or nonparties remain obligated to comply with all applicable laws, including the Privacy Laws, and indeed, that additional measures to protect against the disclosure and/or improper transfer of private information, beyond execution of this Protocol, will be necessary to ensure compliance with the Privacy Laws.  Plaintiff does not agree with regard to

---

[1] The Parties do not include the two Greek auditor defendants: Deloitte Certified Public Accountants, S.A. and PricewaterhouseCoopers Auditing Company S.A. (collectively, the "Greek Auditor Defendants"), because proposed settlements are pending with the Greek Auditor Defendants.

the applicability of foreign laws in the U.S. forum and reserves all of its rights to the object to the applicability of any foreign laws, including foreign Privacy Laws.

**B.     Data Collection and Culling**

1.     Each Party shall collect potentially relevant documents and electronically stored information ("ESI") from each identified custodian, and from company or individually maintained files or resources in a forensically sound manner. The terms "document" and "ESI" as used herein have the same meaning as in Fed. R. Civ. P. 26 and 34.

2.     The Parties will use their best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

3.     Where a discovery request requires production of structured data (meaning, ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database), in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format of a data extraction from such structured data source. The Parties shall use reasonable efforts to exchange technical information with respect to structured data as is necessary to facilitate such meet and confers.

4.     The Parties agree that ESI may be deduplicated globally across sources on a parent level only. ESI may be deduplicated using MD5 or SHA1 hash values. For purposes of this paragraph, only email messages in which the parent documents and all attachments are exactly the same will be considered duplicates.

5.     In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression." As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates or emails within the produced string, provided that none of the earlier emails in the chain contained attachments. In other words, regardless of the existence of a more complete, later email, all emails that contain attachments must also be produced. Email threading must be applied on a parent level.

6.     To the extent the Lead Plaintiff requests the production of documents and ESI that was previously produced by Defendants Dimitris Melissanidis and Spyros Gianniotis in Aegean Marine's bankruptcy, *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374-MEW (Bankr. S.D.N.Y.) or to the Securities and Exchange Commission ("SEC"), the U.S. Department of Justice ("DOJ"), the U.S Attorney's Office for the Southern District of New York ("USAO-SDNY"), the Public Company Accounting Oversight Board ("PCAOB"), or in any other related action or to any other regulatory agency, whether foreign or domestic, Defendants, subject to their objections to the request, may elect to produce the previously-produced documents in the same form in which they originally were produced or prepared for production, even if such form is different from the specifications in this Protocol. Defendants may re-produce the documents using the same Bates numbers and confidentiality designations used when documents were previously produced, and such documents shall be treated in accordance with the Protective Order entered by the Court on November 17, 2021 (ECF No. 336). Where translations of such

documents and ESI into English exist, Defendants shall also produce such translations. The Parties agree to meet and confer to discuss any request for additional available metadata or an alternative production format for documents produced by Defendants in the Aegean Marine bankruptcy or to the SEC, DOJ, USAO-SDNY, the PCAOB or in any other related action or to any other regulatory agency (foreign or domestic), to the extent it is feasible and necessary to facilitate the Lead Plaintiff's review of such documents. Lead Plaintiff does not waive its right to request a different format or with different specifications after Lead Plaintiff has had a reasonable opportunity to review documents previously produced in another related action or regulatory/government investigation or proceeding. Defendants agree to meet and confer regarding additional requests for metadata and formatting changes to the extent the information is available and the requested supplementary requests are feasible.

7. The Parties agree to meet and confer at an early opportunity on an agreed to date to discuss: (a) the identification of the custodial and noncustodial data sources containing potentially relevant ESI for potential collection, review and production; (b) potential use and identification of search terms, tools, or techniques; and (c) the identification and production of documents and ESI from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques. Prior to implementing search terms, the producing party will provide a list of proposed search terms to the requesting party and the Parties will meet and confer regarding any additional terms proposed by the requesting party. The Parties agree to meet and confer to discuss any requests for additional requests for search terms. Nothing in this paragraph will require a producing party to reveal information that constitutes attorney work-product.

8. To the extent any Party intends to review or produce documents through the application of Active Learning, Predictive Coding or Technology Assisted Review (TAR), the Parties agree to meet and confer regarding the search processes and other criteria to be applied to such review, the parameters of any validation testing to be applied, and any other information necessary to understanding the Party's intended search method. Nothing in this paragraph will require a producing party to reveal information that constitutes attorney work-product.

9. The Parties further agree to meet and confer to discuss whether any relevant ESI is reasonably likely to be located on any personal electronic devices and storage systems, within the care, custody and control of the Parties, including cloud-based storage (e.g., Dropbox, iCloud, Google Drive, OneDrive), hard drives, servers, laptops, tablets, smart phones, communications-related applications (such as e-mail or traditional text messaging applications), ephemeral messaging applications (e.g., Snapchat, Confide, Wickr, and Signal), or social media applications with direct messaging capabilities.

10. Prior to the meet-and-confer contemplated by Paragraph B(7) above, each Party will make good faith efforts to inform itself regarding the following information:

    a. the custodians within that Party's possession, custody, or control reasonably likely to have information, documents, or ESI relevant to the claims or defenses of any Party, including a brief description of each person's title and responsibilities;

    b. organizational charts within that Party's possession, custody, or control sufficient to identify the names, titles, and organization of persons

    reasonably likely to have information or documents relevant to the claims or defenses of any Party, to the extent that they exist;

  c. a list of each non-custodial data source within that Party's possession, custody, or control reasonably likely to have information, documents, or ESI relevant to the claims or defenses of any Party, including but not limited to electronic systems, servers, drives, databases, or other data sources, and a general description of each system, server, drive, database, or other data source, including the nature, scope, character, organization, and formats employed; and

  d. other pertinent information within that Party's possession, custody, or control about the electronic documents and ESI and whether those documents are of limited accessibility, because, for example, they were created or used by electronic media that is no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.

11. Nothing in this protocol shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements). Further, the Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched. The Parties shall meet and confer regarding such request to discuss the need for supplemental search terms and/or custodians and to identify supplemental search terms and/or custodians, if any.

12. The Parties will identify potentially relevant hard copy documents and discuss the volume of hard copy documents identified as containing potentially relevant information and provide sufficient details regarding same in order for the Parties to determine how best to identify relevant documents.

**C. Production Formats**

1. The Parties agree to produce email and electronic documents in single page, Group IV black and white TIFF imaged at 300 dpi quality or better (except when color images are required to read or understand the file/document's content), along with the corresponding document-level extracted text and metadata fields in standard Concordance (.DAT) load files, including Opticon/Concordance Image load files. Where a document contains redactions, OCR text will be provided with the appropriate redactions applied to both the TIFF images and corresponding OCR.

2. The Parties agree to produce hard copy documents in single page Group IV black and white TIFF imaged at 300 dpi quality or better (except when color images are required to read or understand the file/document's content), format along with the corresponding document-level OCR and metadata fields in standard Concordance (.DAT) load files, including Opticon/Concordance Image load files. Where a document contains redactions, OCR text will be provided with the appropriate redactions applied to both the TIFF image and corresponding OCR.

      3.      The Parties agree to produce information with the metadata fields as set forth in Attachment A where such information is available.

      4.      The Parties agree to produce the following electronically stored documents in native format productions:

          i.      Excel Spreadsheets, produced in a manner that includes metadata and in native file format if possible or in legible non-PDF format, such as TIFF and in the order in which they were stored in the ordinary course of business;

          ii.      Media files (e.g., video and audio files), produced in native file format only, and

          iii.      The aforementioned native files shall be produced in native format with a one-page production placeholder sheet bearing the legend "Produced in Native File Format Only" unless they require redaction, in which case such documents shall be produced in TIFF format as set forth herein or in another agreed-upon format.

      5.      A producing party reserves the right as to whether to produce non-native image files of ESI in color. A receiving party may request that specific ESI be produced in color where the color is necessary to read the document or to understand the meaning or content of the document.

      6.      The Parties will make reasonable efforts to ensure that all documents and ESI they produce are decrypted and accessible. For password protected documents, the producing parties shall make all reasonable efforts to provide the password needed to access the documents.

      7.      If any original document has notes affixed thereto or attachments, the Parties will produce copies of those documents with the accompanying notes and attachments unless privileged.

      8.      All compressed or zipped ESI shall be unzipped or decompressed during processing to the extent reasonably feasible. To the extent an electronic file contains embedded files, such files shall generally be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship.

      9.      The Parties agree to provide an "All Custodian" field in the load file along with the last production. This field will contain all custodian information identifying the custodians for the document even though the exact copy may have been deduplicated. The receiving party may also request an updated "All Custodian" .DAT load file if needed.

      10.      The Parties agree that redacted privileged information on a document image will be designated by a white box with "REDACTED FOR PRIVILEGE" in black font or a black box with "REDACTED FOR PRIVILEGE" in white font. The Parties also agree that information redacted pursuant to privacy laws will be designated by a white box with "REDACTED FOR PRIVACY" in black font or a black box with "REDACTED FOR PRIVACY" in white font. Producing parties will only redact discoverable documents, ESI, or metadata within the bounds of applicable law or upon order of the Court.

11. The treatment of confidential documents and ESI shall be governed by the Protective Order the Court entered on November 17, 2021 (ECF No. 336), and any amendments or supplements thereto.

12. Each page of a produced document which has been imaged as a TIFF will have a legible, unique page identifier "Bates number" electronically burned onto the image at a location that does not obliterate, conceal or interfere with any information from the produced document. As addressed in Paragraph B(6) of this Protocol, the Parties agree that reproduced documents from the Aegean Marine's bankruptcy, SEC, DOJ, USAO-SDNY or PCAOB investigations, or any other related action or any other regulatory agency, whether foreign or domestic, may be produced in the format used at that time and the production format need not be revised to meet this specification.

13. The producing party may produce documents via a secure file transfer mechanism and/or on readily accessible media (CD-ROM, DVD, external hard drive).

14. Each production will be labeled with the begin/end production numbers, case caption and Producing Party's name. Encryption or similar passwords will be provided via email when productions are provided by the producing party.

**D.     Privilege Assertions and Related Privilege Logs**

1. This Protocol, including the terms governing the production of privileged or work-product protected documents, is subject to the terms of the Protective Order the Court entered on November 17, 2021 (ECF No. 336), and/or any 502(d) Order entered in this matter. This shall be interpreted to provide the maximum protection allowed by Fed. R. of Evid. 502(d).

2. Any Party that withholds information (including by redaction) otherwise discoverable by claiming that the information is privileged must produce a log in compliance with Fed. R. Civ. P. 26(b)(5)(A) and as set forth herein.

3. For each rolling production, claims of privilege or attorney work-product for documents or ESI withheld from production should be asserted within thirty (30) days after each rolling production has been completed via privilege log. The privilege log shall include at a minimum the following information:

      i. Document Identifier;

      ii. Document Date;

      iii. Author/From – which shall include company affiliation with each log entry or provided in a glossary;

      iv. Recipient/To/CC/BCC – which shall include company affiliation with each log entry or provided in a glossary;

      v. Description – which shall describe the nature of the withheld documents, communications, or tangible things not produced or disclosed and do so in a manner that, without revealing the privileged information, will enable other Parties to assess the claim; and

      vi.      Type of privilege being asserted (e.g. Attorney-Client Privilege, Work Product Doctrine, GDPR or other relevant foreign privacy law compliance, or any other applicable privilege or protection).

      4.      Communications between a Party and counsel for that Party containing privileged and/or work product material do not need to be logged.  Further, in no event shall there be any requirement to log internal communications within the law firm of counsel representing a Party, or communications with counsel for a Party with counsel for another Party or others.  The Parties agree to meet and confer as appropriate to discuss if other categories of communications need not be logged.

**E.**      **Limitations**

      1.      Nothing in this Protocol shall prohibit a Party from seeking modification of any of its terms either by stipulation or by application to the Court.  Should any Party subsequently determine that it cannot in good faith proceed as required herein or without undue burden and cost, the Parties will meet and confer to attempt to resolve any dispute before seeking Court intervention.  Similarly, should any receiving party determine that additional information or different production format is warranted, the Parties will meet and confer to attempt to resolve any requests before seeking Court intervention.

      2.      This Protocol relates to the general protocol of identifying and producing hard copy documents and ESI, and is not otherwise intended to alter the Parties' respective rights and obligations under applicable law.  The Parties may stipulate or any party may bring a motion to modify or clarify the application of this Protocol to a particular document or set of documents, particular set of ESI, or otherwise.

      3.      This Protocol supplements the provisions of Fed. R. Civ. P. Rules 26 and 34 concerning discovery of ESI, the Court's Local Rules, and any other applicable orders and rules.  This Protocol does not displace Rules 26 or 34 or diminish a Party's obligations to search for, collect, and produce reasonably accessible relevant discoverable information.  The Parties agree that if a Party designates a data source as not reasonably accessible, it shall be assessed using the factors established in Fed. R. Civ. P. 26 (and case law interpreting the same).

      4.      Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

///

///

///

**Dated:** May 3, 2022	**BERMAN TABACCO**

By: */s/ Christopher T. Heffelfinger*
Christopher T. Heffelfinger (admitted *pro hac vice*)

Joseph J. Tabacco, Jr. (JT1994)
Nicole Lavallee (admitted *pro hac vice*)
Kristin J. Moody (admitted *pro hac vice*)
A. Chowning Poppler (admitted *pro hac vice*)
Jeffrey Rocha (admitted *pro hac vice*)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  jtabacco@bermantabacco.com
          nlavallee@bermantabacco.com
          kmoody@bermantabacco.com
          cheffelfinger@bermantabacco.com
          cpoppler@bermantabacco.com
          jrocha@bermantabacco.com

Jay W. Eng
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: jeng@bermantabacco.com

*Counsel for Lead Plaintiff Utah Retirement Systems*

**BOIES SCHILLER FLEXNER LLP**

By:   */s/ Peter M. Skinner*
          Peter M. Skinner

Jonathan D. Schiller
Matthew L. Schwartz
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Email: jschiller@bsfllp.com
          mlschwartz@bsfllp.com
          pskinner@bsfllp.com

*Counsel for Defendant Dimitris Melissanidis*

**MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO PC**

By:   */s/ Brian A. Jacobs*
          Brian A. Jacobs

Nicole Buseman
Christopher Pavlacka
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 880-9536
Email:  bjacobs@maglaw.com
          nbuseman@maglaw.com
          cpavlacka@maglaw.com

*Counsel for Defendant Spyros Gianniotis*

**SO ORDERED.**

Dated: _____, 2022        _____
                                                              HON. NAOMI REICE BUCHWALD, U.S.D.J.

## Attachment A – Metadata fields for production

| Field | Sample Data | Comment |
|---|---|---|
| BegBates | ABC00000001 | First bates number of the document |
| EndBates | ABC00000001 | Last bates number of the document |
| Bates Beg Attach | ABC00000002 | First bates number of the parent document |
| Bates End Attach | ABC00000009 | Last bates number of the attachment range |
| Custodian | John Doe | Person or entity from which the document was collected |
| All Custodians | John Doe: Jane Smith | All persons or entities from which the parent document was collected |
| Email From | Doe, John [johndoe@gmail.com] | Author/sender of the email |
| Email To | Doe, Jane [jane.doe@gmail.com] | List of recipients |
| Email CC | Smith, Steve [s.smith@gmail.com] | List of individual(s) carbon copied |
| Email BCC | Smith, Andrew [smith.a@gmail.com] | List of individual(s) blind carbon copied |
| Email Subject | Changes Made to Agreement | Subject of email |
| Attachment Name | Letter to customer; draft advisement to customer letter | File name(s) of attachments to a parent document (separated by a semicolon) |
| Document Subject | Notes from call | Subject of the document extracted from the properties of the native file (may be duplicative of file name) |
| Sort Date (aka master date) | 1/10/2010 10:15 AM | Date/Time from the Email Sent Date, Email Received Date, or Last Modified Date (in order of precedence) repeated for parent document and all attachments |
| Date Sent | 1/10/2010 10:15 AM | Date/Time the email was sent |
| Date Received | 1/10/2010 10:15 AM | Date/Time the email was received |
| Date Created | 1/10/2010 10:15 AM | Date attachment or loose e-file was created |
| Date Last Modified | 1/10/2010 10:15 AM | Date attachment or loose e-file was last modified |
| Last Modified By | | Any value populated in the last modified by field of the document properties |
| Author | John Doe | Original author of the document |
| File Name | MyBudget.docx | Original file name of the document |
| File Type | Outlook Message File | File classification of the native file |
| Document Extension | PST | File extension of the document |
| MD5HASH | 18E11AEC662B6F8D29BEE75 0B1F660D2 | MD5 hash value of the document |

| Field | Sample Data | Comment |
|---|---|---|
| Native File | D:\Production\NATIVE\001\AB C00000001.xls | Path to native file |
| Text | D:\Production\TEXT\001\ABC0 0000001.txt | Path to extracted text/OCR files |
| Confidentiality Designation | Confidential or AEO | Field to track confidentiality designations assigned to individual documents |
| Redaction | Yes | Field to track redaction(s) applied to individual documents |
| Conversation Index | 01D52C5C102066AC3916B34A40C381B906E68FEE9343 | Hexadecimal number that specifies the index to the conversation thread of the message |
| Hidden Data | Yes/no | Indication of the existence of hidden document data such as hidden text in a Word document, hidden columns, rows, or worksheets in Excel, or slide notes in PowerPoint. |