UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE AEGEAN MARINE PETROLEUM NETWORK, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) | Case No. 1:18-cv-04993 (NRB)<br><br>Hon. Naomi Reice Buchwald |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
MOTION FOR: (I) FINAL APPROVAL OF THE PROPOSED
INDIVIDUAL DEFENDANTS SETTLEMENTS; (II) FINAL CERTIFICATION OF THE
SETTLEMENT CLASS; AND (III) FINAL APPROVAL OF THE PROPOSED <u>INDIVIDUAL
DEFENDANTS PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................ 1

II.  SUMMARY OF CLAIMS ................................................................... 3

III.  ARGUMENT ..................................................................................... 4

    A.  The Proposed Individual Defendants Settlements Are Fair, Reasonable and Adequate Under The Applicable Legal Standards .................................................... 4

        1.  The Standard For Evaluating Class Action Settlements................................. 4

        2.  Application of the *Grinnell* Factors Supports Final Approval ...................... 5

            a)  Factor 1—The Complexity, Expense and Likely Duration of The Action Favor Final Approval........................................................... 5

            b)  Factor 2—The Settlement Class's Reaction To The Individual Defendants Settlements Favors Final Approval ................................ 7

            c)  Factor 3—The Stage of The Proceedings and The Amount of Information Reviewed and Analyzed Favor Final Approval ............ 8

            d)  Factors 4 and 5—The Risks of Establishing Liability and Damages Favor Final Approval........................................................ 10

                (1)  The Risks of Establishing Liability..................................... 11

                (2)  The Risks of Establishing Damages.................................... 14

            e)  Factor 6—The Risk of Maintaining The Action As A Class Action Through Trial Favors Final Approval................................. 15

            f)  Factor 7—The Individual Defendants' Ability To Withstand A Greater Judgment Favor Final Approval........................................ 16

            g)  Factors 8 And 9—The Range of Reasonableness of the Settlement Funds In Light of The Best Possible Recovery and All The Attendant Risks of Litigation Supports Final Approval...... 17

        3.  Application of The Remaining Requirements of Amended Rule 23(e)(2) Supports Final Approval..................................................... 18

            a)  Factor A—Lead Plaintiff and Lead Counsel Have Adequately Represented The Settlement Class................................................ 18

            b)  Factor B—The Individual Defendants Settlements Were

Reached After Arm's-Length Negotiations Between Experienced Securities Litigators and Are Procedurally Fair........... 19

c)   Factor C—The Relief Provided For The Settlement Class Is Adequate Taking Into Account All Factors.................................... 20

d)   Factor D—The Proposed Methods of Distributing The Individual Defendants Settlements To Settlement Class Members Are Fair And Reasonable................................................ 21

B.   The Individual Defendants Plan of Allocation is Fair And Reasonable ................... 21

C.   Notice To The Settlement Class Satisfied Rule 23, The PSLRA and Due Process and Was Reasonable..................................................................... 22

D.   Class Certification Remains Appropriate ................................................ 25

IV.   CONCLUSION ........................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Athale v. Sinotech Energy Ltd.*,
   No. 11 Civ. 05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) .................................. 20

*Beneli v. BCA Fin. Servs., Inc.*,
   324 F.R.D. 89 (D.N.J. 2018) ............................................................................. 15

*Christine Asia Co. v. Yun Ma*,
   No. 1:15-MD-02631-CM-SDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................... 6

*City of Detroit v. Grinnell Corp. (Grinnell)*,
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
   *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)........................................... passim

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................ 24

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................... 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................... 22

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................... 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................... 10

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................... 22

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................... 21

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)..................................................................... 17

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom.*
   *In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) ........................................ 16, 21

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................. 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................ 22

*In re Gilat Satellite Networks, Ltd*.,
    No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........................... 7, 13

*In re IMAX Sec. Litig. (IMAX II)*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................... 8, 10

*In re Indep. Energy Holdings PLC, Inc.*,
    No. 00-CIV-6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................................. 13

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................ 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig*.,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................... 5

*In re Merrill Lynch Tyco Research Sec. Litig*.,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...................................................................... 22

*In re Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ......................................................................... 6

*In re Ocean Power Techs., Inc.*,
    No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................. 16

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .................................... 10, 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............... 10, 15, 20

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ......................................... 17

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................ 6

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................. 17

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................... 6, 10, 20

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................. 22

*Lea v. Tal Educ. Grp.*,
No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................ 5, 7, 13

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................... 7, 14

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009) .................................................................................. 4

*Mikhlin v. Oasmia Pharm. AB*,
No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021)...................... 13, 19

*Padro v. Astrue*,
No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013).......................... 19

*Park v. The Thompson Corp.*,
No. 05 Civ. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008)................................... 15

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
No. 11-CV-05801 (DLI)(VVP), 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ......................... 14

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331 (CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............ 6, 7, 17, 19

*TransUnion LLC v. Ramirez,*
141 S. Ct. 2190 (2021) ....................................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................... 24

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ................................................................................... 24

*White v. First Am. Registry, Inc.*,
No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007)........................................ 5

**Statutes and Regulations**

15 U.S.C. § 78u-4(a)(7)........................................................................................... 24

15 U.S.C. § 78u-4(f)(2)(B) ...................................................................................... 15

Rule 10b-5(a) ........................................................................................................ 3

Rule 10b-5(c) ........................................................................................................ 3

Securities and Exchange Act of 1934 § 10(b) .................................................... 1, 10, 17

Securities and Exchange Act of 1934 § 20(a)..................................................................... 3

Securities and Exchange Act of 1934 § 20(b) ................................................................. 3

Securities and Exchange Act of 1934 § 20A ................................................................. 3

**Federal Rules**

Fed. R. Civ. P. 23 ................................................................................................... 21

Fed. R. Civ. P. 23(a) ............................................................................................. 25

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 25

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 23, 24

Fed. R. Civ. P. 23(e) .............................................................................................. 4

Fed. R. Civ. P. 23(e)(1) ......................................................................................... 24

Fed. R. Civ. P. 23(e)(2) ................................................................................... passim

Fed. R. Civ. P. 23(e)(2)(C)(iv) .............................................................................. 21

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 21

**Docketed**

*In Re: Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 1:11-md-02262-NRB (S.D.N.Y. Aug. 14, 2018) ............................................ 21

*Laydon v. Mizuho Bank, Ltd. et al.*,
    No. 1:12-cv-03419-GBD-SLC (S.D.N.Y. Nov. 10, 2016) ....................................... 21

Lead Plaintiff Utah Retirement Systems ("Lead Plaintiff" or "URS") respectfully submits this memorandum in support of its motion for (i) final approval of a proposed settlement with Spyros Gianniotis ("Gianniotis"), Aegean Marine Petroleum Network, Inc.'s ("Aegean" or the "Company") former Chief Financial Officer (the "Gianniotis Settlement"); (ii) final approval of a proposed settlement with Dimitris Melissanidis ("Melissanidis"), Aegean's founder, (the "Melissanidis Settlement");[1] (iii) final certification of the Settlement Class;[2] and (iv) final approval of the proposed Individual Defendants Plan of Allocation.

## I.       INTRODUCTION

Lead Plaintiff and Lead Counsel have achieved Settlements with Gianniotis and Melissanidis (the "Individual Defendants") that provide for a $11,949,999 cash payment ($11 million from Gianniotis and $949,999 from Melissanidis).  If approved, these settlements would bring the total settlements for the Settlement Class to $41,749,999 with the previously approved settlements totaling $29.8 million with PricewaterhouseCoopers Auditing Company S.A. ("PwC Greece") and Deloitte Certified Public Accountants, S.A. ("Deloitte Greece") (collectively, the "Auditor Defendants") (the "Auditor Settlements").  Lavallee Decl. ¶¶13, 53, 85; ECF Nos. 402 and 404.  This total recovery represents 11.9% of the maximum Section 10(b) damages in this Action, which far exceeds the median average for percentage recoveries in Private Securities Litigation Reform Act of 1995 ("PSLRA") settlements.  Lavallee Decl. ¶85.

The Individual Defendants Settlements were reached after, *inter alia,* an extensive investigation, hotly contested motions to dismiss, the filing of motions for class certification and very substantial discovery.  *See* Lavallee Decl. ¶¶5-6, 27-29, 58-63.  Based upon their experience, their

---

[1] The Gianniotis and Melissanidis settlements are referred to collectively as the "Individual Defendants Settlements."

[2] Capitalized terms not defined herein have the same meaning as in the Notice of (I) Pendency of Class Action and Proposed Individual Defendants Settlements; and (II) Final Approval Hearing For The Individual Defendants Settlements, the Individual Defendants Plan of Allocation and Motion For Approval of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Detailed Notice") (ECF No. 438-6), or in the Declaration of Nicole Lavallee ("Lavallee Decl." or "Lavallee Declaration"), filed herewith.  Unless indicated, all references to "Compl. ¶" refer to the Consolidated Class Action Complaint ("Complaint") (ECF No. 81), all emphasis is added and all alterations, internal quotation marks and citations are omitted.

evaluation of the strength and weaknesses of the claims and the risks of protracted litigation and collection here, Lead Counsel and Lead Plaintiff believe these proposed settlements represent excellent results, are in the best interests of the Settlement Class and should be approved.  *Id.* ¶¶11, 15, 74, 84.

Indeed, the risks and expenses of protracted litigation are heightened here given that the Individual Defendants reside in Greece and that Aegean, which operated out of Greece, filed for bankruptcy.  Lavallee Decl. ¶¶9, 75-78, 109.  Moreover, even if Lead Plaintiff were to establish liability against the Individual Defendants, these defendants may only be found liable for a portion of any damages awarded.  Lavallee Decl. ¶80.  Additionally, even if Lead Plaintiff prevailed at trial, there exists risks with collecting directly from two foreign individuals who may have limited or inaccessible assets or from insurance given potential coverage issues and potential exhaustion of insurance proceeds defending the claims here and/or resolving other claims.  *See* Lavallee Decl. ¶¶75-78.  The $11,949,999 Individual Defendants Settlements avoid these risks and provide an immediate and very substantial financial benefit for the Settlement Class.

Further, as detailed below, the settlements are the result of arm's-length negotiations between highly experienced counsel with the assistance of a mediator and a magistrate judge.  Moreover, Lead Plaintiff, a highly sophisticated institutional investor that has been involved in and provided oversight throughout the litigation, strongly supports the Individual Defendants Settlements as fair, reasonable and adequate.  *See* Declaration of Kevin Catlett on Behalf of URS ("Lead Plaintiff Decl." or "Lead Plaintiff Declaration") (submitted herewith as Ex. 5 to the Lavallee Decl.), at ¶¶4, 7.  Further, to date, no Settlement Class Member has raised any objection to the Individual Defendants Settlements and only one Settlement Class Member with $1,234.95 in purchases has requested exclusion.  A.B. Data Decl. ¶¶15-18 & Ex. E.[3]

Accordingly, Lead Counsel respectfully submits that these settlements are an outstanding result for the Settlement Class and provide a fair and reasonable resolution of the remaining claims.

---

[3] *See* Declaration of Jack Ewashko Regarding Mailing of Notice and Publication of Summary Notice ("A.B. Data Decl." or "A.B. Data Declaration") (submitted herewith as Lavallee Decl. Ex. 6).

## II.    <u>SUMMARY OF CLAIMS</u>

This Action stems from an alleged multi-faceted fraudulent scheme whereby insiders stole $300 million from Aegean and artificially inflated the Company's earnings and revenues by reporting $200 million in worthless accounts receivable (the "Sham Receivables") with four shell companies (the "Shell Companies").  *See*, *e.g.*, Compl. ¶¶126, 148-49; Lavallee Decl. ¶17.

Indeed, following an internal investigation by new management, on November 2, 2018, Aegean announced, *inter alia*, that (a) Aegean's financial results were manipulated by improperly booking approximately $200 million in accounts receivables from bogus transactions with four Shell Companies controlled by former employees or affiliates of Aegean; (b) approximately $300 million in cash and assets had been misappropriated by former affiliates; and (c) Aegean's financial results were substantially overstated and there were material weaknesses in its internal controls.  Compl. ¶¶7-8, 26, 27, 477-79.  Just days later, on November 6, 2018, Aegean filed Chapter 11 bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of New York, Case No. 18-13374 (MEW).  Compl. ¶47; Lavallee Decl. ¶¶17-18.

On October 30, 2018, the Court appointed URS as Lead Plaintiff and approved its selection of Berman Tabacco as Lead Counsel.  Lavallee Decl. ¶24.  On February 1, 2019, Lead Plaintiff filed its Complaint against Melissanidis, Gianniotis, certain of Aegean's former officers and directors and certain auditors, including PwC Greece and Deloitte Greece.  *Id*. ¶25.

Over the course of several weeks in Spring 2020, the various defendants filed motions to dismiss the Complaint.  Lavallee Decl. ¶27; ECF Nos. 180-85, 187-89, 191-201, 210-14, 225-34.  Lead Plaintiff filed five responses to these motions on June 30, 2020 and defendants filed their replies on August 20, 2020.  Lavallee Decl. ¶28.  On March 29, 2021, after full briefing and a hearing, the Court issued its decision on the motions to dismiss.  ECF No. 293.  While the Court granted the motions of several defendants, it denied in whole or in part the motions filed by the Individual Defendants and the Auditor Defendants.  *Id*.; *see also* Lavallee Decl. ¶29.  In particular, while the Court dismissed the Rule 10b-5(a) & (c) and Section 20(a) and 20(b) claims against Melissanidis for lack of personal jurisdiction, it upheld the Section 20A insider trading claim and  upheld all claims alleged against Gianniotis.  *Id*.;

ECF No. 293 at 135-38.

Since then, Lead Plaintiff has filed a motion for class certification, a revised motion for class certification as to only the claims against Melissanidis and engaged in substantial discovery, which included two depositions, written discovery and numerous document productions.  Lavallee Decl. ¶¶40-51.  The parties have engaged in protracted settlement negotiations, including two separate full day mediation sessions with Lead Plaintiff, Gianniotis and Melissanidis and an additional settlement conference with Magistrate Judge Aaron, Lead Plaintiff and Melissanidis.[4]

Following this extensive discovery and protracted settlement negotiations, Lead Plaintiff and Gianniotis reached an agreement in principle to settle as set forth in the Gianniotis Stipulation and Lead Plaintiff and Melissanidis reached an agreement in principle to settle as set forth in the Melissanidis Stipulation.  Lavallee Decl.  ¶¶64-72.

The Lavallee Declaration, filed concurrently herewith, further details the factual and procedural background of this case.  For the sake of brevity, those facts will not be recited here.

## III.   ARGUMENT

### A.   The Proposed Individual Defendants Settlements Are Fair, Reasonable and Adequate Under The Applicable Legal Standards

#### 1.   The Standard For Evaluating Class Action Settlements

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Courts in the Second Circuit realize the "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

The standards governing approval of class action settlements are well established in this Circuit.  The U.S. Court of Appeals for the Second Circuit has held that the following were factors to be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of

---

[4] Further, the Auditor Settlements, comprised of two settlements with PwC Greece and Deloitte Greece totaling $29.8 million, have been finally approved by the Court.  Lavallee Decl. ¶55; ECF Nos. 402 & 404.

discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[5]

Further, on December 1, 2018, Rule 23(e)(2) was amended to identify the following factors for the Court to consider, many of which overlap with the *Grinnell* factors:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Importantly, in deciding whether a settlement merits approval, "not every factor must weigh in favor of the settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). Further, when weighing these factors, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *4 (S.D.N.Y. Dec. 23, 2009) (quoting *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007) (Kaplan, J.)). Here, the Individual Defendants Settlements satisfy these criteria for approval.

### 2. Application of the *Grinnell* Factors Supports Final Approval

#### a) Factor 1—The Complexity, Expense and Likely Duration of The Action Favor Final Approval

This factor satisfies both *Grinnell*'s Factor 1 and Factor C of the amended Rule 23(e)(2) factors.

By their nature, securities class actions are difficult and notoriously uncertain. *See, e.g., In re Sumitomo*

---

[5] *City of Detroit v. Grinnell Corp. (Grinnell)*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

*Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (district courts in this Circuit "have long recognized" that securities class actions are "notably difficult and notoriously uncertain"); *Christine Asia Co. v. Yun Ma*, No. 1:15-MD-02631-CM-SDA, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019).  Because it is "common knowledge that class action suits have a well deserved reputation as being most complex," courts acknowledge the "overriding public interest in favor of settlement" of class actions.  *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 n.6 (S.D.N.Y. 1993).  Indeed, as one court noted, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM)(MHD), 2014 WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014).

Beyond the complexities inherent in securities litigation generally, there are challenges unique to litigating the claims against the Individual Defendants.  Lavallee Decl. ¶¶74-84.  Even assuming Lead Plaintiff establishes a fraud occurred at Aegean, it would still face additional challenges that would undoubtedly delay any potential resolution, create uncertainties as to the outcome and potentially frustrate Lead Plaintiff's ability to carry its burden at trial stemming in part because Aegean was a Greek Company and is in bankruptcy.  These challenges include *inter alia*, (i) authenticating and rendering admissible critical documents, particularly given Aegean's Bankruptcy; (ii) identifying, accessing and authenticating evidence located overseas; (iii) locating, subpoenaing, interviewing and/or deposing former Aegean employees and other key witnesses who reside overseas; (iv) overcoming privilege assertions by the Individual Defendants and others under Europe's privacy and security law, the General Data Protection Regulation ("GDPR"); (v) disputing Gianniotis's arguments that he too was misled, that he relied on others—including Aegean's outside auditors—in certifying Aegean's financials and making alleged misstatements and proving that his "level of culpability rose to the level of scienter," *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *6 (S.D.N.Y. Nov. 7, 2007); (vi) demonstrating Melissanidis's control over Aegean in the absence of documentary evidence bearing his name or signature; (vii) establishing damages; and (viii) collecting a judgment from two Greece residents in the face of dwindling and/or

non-existent insurance dollars.  Lavallee Decl. ¶¶74-84; *see also  Lea*, 2021 WL 5578665, at *12 (holding that limited insurance and potential issues collecting from a foreign defendant weighed in favor of final approval).  Absent settlement, opposing these challenges would have led to significant additional expenses with no guarantee of a positive result for the Class.  Lavallee Decl. ¶¶81-84.  *See, e.g., In re Gilat Satellite Networks, Ltd*., No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) ("In this case, the costs of litigating are anticipated to be significant, since extensive discovery remains to be completed and since both [defendant company] and the companies with which [defendant] did business under the allegedly fraudulent scheme are located overseas, which will increase the cost and complexity of discovery.").

By settling the claims against the Individual Defendants at this juncture, Lead Plaintiff has forestalled substantial, continued and uncertain litigation against the Individual Defendants—which could have substantially limited the pool of insurance funds available for claims against Gianniotis— and assured the Settlement Class of a tangible recovery now.  Thus, this factor weighs in favor of approving the Individual Defendants Settlements.

### b)      Factor 2—The Settlement Class's Reaction To The Individual Defendants Settlements Favors Final Approval

The reaction of the Settlement Class to the Individual Defendants Settlements is a significant factor to be weighed in considering its adequacy.  *See Shapiro*, 2014 WL 1224666, at *9 ("A small number of objections are convincing evidence of strong support by class members."); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Here, the reaction of the Settlement Class to date strongly indicates the fairness of the Individual Defendants Settlements.  Pursuant to the Court's June 1, 2023 Preliminary Approval Orders (ECF Nos. 446-47), a total of 40,676 Postcard Notices and Detailed Notices were mailed to potential Settlement Class Members and their nominees identified in connection with the Original Notice Program, 115 Postcard Notices were re-mailed to persons whose original mailings were returned and for whom updated addressed were provided and 841 additional Detailed Notices requested by banks, brokerage houses and nominees were forwarded by the nominees to their customers.  *See* A.B. Data Decl. ¶¶6-11 & Exs. A & B.  In addition, the

Summary Notice was published in *Investor's Business Daily* and *PRNewswire* on June 19, 2023. *Id.* 12 & Exs. C & D. Moreover, the Detailed Notice and Claim Form ("Individual Defendants Settlements Notice Packets") were distributed via the Depository Trust Company's Electronic Legal Notice System and the Postcard Notice, Detailed Notice, Summary Notice and other relevant documents were posted on the website of the Claims Administrator. *Id.* ¶¶3, 9, 14. *See also* Section III.C., below.

While the September 28, 2023 deadline set by the Court for Settlement Class Members to exclude themselves or object to the Individual Defendants Settlements has not yet passed, to date Lead Counsel has not received any objections and only one request for exclusion from an investor with $1,234.95 in purchases. A.B. Data Decl. 15-18 & Ex. E; Lavallee Decl. ¶¶14, 101. Lead Plaintiff will address any other exclusions and/or objections, should they arise, in its reply papers which are due October 10, 2023.

### c)  Factor 3—The Stage of The Proceedings and The Amount of Information Reviewed and Analyzed Favor Final Approval

The third factor inquires "'whether the parties had adequate information about their claims,' such that their counsel can intelligently evaluate 'the merits of [p]laintiff's claims, the strengths of the defenses asserted by [d]efendants, and the value of [p]laintiffs' causes of action for purposes of settlement.'" *In re IMAX Sec. Litig. (IMAX II)*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (alteration in original).

Lead Plaintiff and Lead Counsel had a clear understanding of the strengths and weaknesses of the case when they negotiated the Individual Defendants Settlements. As noted above, the Settling Parties have been actively litigating this Action since its commencement, during which time Lead Counsel have engaged in extensive efforts to prosecute the claims. These efforts included, *inter alia*: (a) research and investigation of the claims; (b) review of Aegean's U.S. Securities and Exchange Commission ("SEC") filings, earnings calls, analyst reports and other publicly available information; (c) work with investigative staff to uncover relevant facts and witnesses; (d) research of legal issues and analysis of documents filed in connection with several court cases involving Aegean and/or some of the defendants, including a significant volume of pleadings and discovery filed in the Aegean

8

Bankruptcy and in cases brought by the Litigation Trustee in the Aegean Bankruptcy;[6] (d) consultation with forensic accounting/auditing consultants, international privacy law consultants and foreign counsel on various matters; (f) preparation of a comprehensive Complaint; (g) retention and work with Lowenstein Sandler LLP ("Lowenstein" or "Bankruptcy Counsel") to protect the Settlement Class's claims, including against the Individual Defendants; (h) extensive briefing to oppose defendants' motions to dismiss; (i) settlement negotiations with the Auditor Defendants and obtaining final approval of the Auditor Settlements; (j) issuance of discovery requests to the Individual Defendants and review of their responses and objections; (k) responding to Individual Defendants' discovery requests and review and production of 17,263 pages of Lead Plaintiffs documents; (l) issuance of 15 subpoenas to non-parties; (m) review of auditor workpapers related to Aegean (n) review and analysis of over 187.052 gigabytes of documents received in discovery (including substantial productions from Aegean's successor and its Litigation Trustee); (o) deposing a key non-party; (p) preparing two motions for class certification and defending its expert's deposition; (q) preparing for and attending two mediations and a settlement conference; (r) negotiating and preparing the Settlement Agreements with the Individual Defendants and the papers in support of approval of same; and (s) work with the Claims Administrator to provide notice of the Individual Defendants Settlements to Settlement Class Members.   *See* Lavallee Decl. ¶¶8, 10, 43-51, 58-73, 104.

In addition, and as described in more detail in the Lavallee Declaration, working with Bankruptcy Counsel, Lead Counsel successfully: (a) opposed Aegean's efforts through the Aegean Bankruptcy to release all investors' claims under the federal securities laws, which would have included those against non-debtors such as the Individual Defendants; (b) negotiated and ultimately obtained Bankruptcy court approval of a complete carve-out of Settlement Class Members' claims from the proposed sweeping release language; (c) obtained modifications to the plan of reorganization, preserving Lead Plaintiff's right to assert its claims to the proceeds from the Directors and Officers policies, which insurance would be applicable to claims against certain of Aegean's officers and

---

[6] The Chapter 11 plan established a Litigation Trust to pursue claims belonging to Aegean's bankruptcy estate against various potential wrongdoers on behalf of the estate.

directors, such as Gianniotis; and (d) preserved the rights of Lead Plaintiff, on behalf of the Settlement Class, to pursue and obtain discovery from the Debtors after confirmation of the Chapter 11 Plan. Lavallee Decl. ¶¶30-35

The above-described efforts have resulted in total recoveries of over $41.7 million for the Settlement Class, or 11.9% of maximum Section 10(b) damages, including $11,949,999 from the Individual Defendants. Lavallee Decl. ¶¶13, 53, 85. This is a significant recovery particularly when compared to the risks and expenses of likely protracted litigation and collectability challenges even if Lead Plaintiff were to prevail at trial. *Id*.

As a result of these litigation efforts, Lead Plaintiff and Lead Counsel became very familiar with the Individual Defendants' defenses and the procedural challenges, and "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

Given this, Lead Counsel's opinion that the Individual Defendants Settlements are fair, reasonable and adequate is entitled to "great weight." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). *See also Veeco*, 2007 WL 4115809, at *12; *IMAX II*, 283 F.R.D. at 190 ("indeed, formal discovery need not have necessarily been undertaken yet by the parties"); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("The judgment of Lead Counsel, which is experienced in securities class-action litigation, that the Settlement is in the best interests of the Class is entitled to great weight.").

### d)   Factors 4 and 5—The Risks of Establishing Liability and Damages Favor Final Approval

*Grinnell* holds that, in assessing the fairness, reasonableness and adequacy of a settlement, courts should consider such factors as the "risks of establishing liability" and "the risks of establishing damages." 495 F.2d at 463. This factor overlaps with Factor C of the Amended Rule 23(e)(2) factors. While Lead Plaintiff and Lead Counsel believe that the claims asserted against the Individual

Defendants are meritorious, they also recognize that there were considerable risks in pursuing the Action against the Individual Defendants that could have led to a substantially smaller recovery or no recovery at all for the Settlement Class.  Lavallee Decl. ¶¶74-84.

These risks were heightened here as to the Individual Defendants and support final approval of the Individual Defendants Settlements.

### (1)        The Risks of Establishing Liability

**Settling-Defendants-Specific Liability Hurdles.**  Despite the strengths of Lead Plaintiff's case, there remained numerous hurdles to establishing the Individual Defendants' liability.   In particular, the Individual Defendants have contended in their motions to dismiss and answers, *inter alia*, that Lead Plaintiff cannot establish their liability or damages for a variety of reasons.

Throughout the litigation, Gianniotis has claimed that, *inter alia*: (a) he had no knowledge of the fraudulent conduct at issue or the red flags pertaining to the fraud; (b) that the Settlement Class's damages resulted from acts or omissions of persons or entities over which Gianniotis had no control; (c) that he acted in good faith and did not act with the requisite intent; and (d) that he did not proximately cause or contribute to any damages and that any damages incurred were caused by intervening acts of others.  *See*, *e.g.*, Answer, ECF No. 304 at ¶248 & 7th, 8th, 9th, 10th, and 12th Affirm. Defenses).  Gianniotis has claimed and/or will also likely claim that Lead Plaintiff cannot prove that he was in any way involved in or knew of the Sham Receivables or the Shell Companies.  Lavallee Decl. ¶76.  Indeed, Lead Plaintiff assumes Gianniotis will claim that the evidence shows that his responsibilities at Aegean focused on liaising with banks and providing support for capital raises such that the responsibility for Aegean's financial reporting fell almost exclusively to others, such as Aegean's former Comptroller.  *Id.*  Further, similar to arguments raised by certain other dismissed officer and director defendants early in the litigation, Lead Plaintiff also assumes Gianniotis will argue that he was entitled to rely on the professional work of Aegean's outside auditors who opined on Aegean's financials during the Class Period.  *Id.*  Gianniotis will also likely argue that the evidence will show that, in his role as the Company's point person with Aegean's creditors, he honestly portrayed Aegean's financial strength and viability, and candidly assured them that the accounts receivables at

issue in this litigation—the Sham Receivables—were not part of the Company's borrowing base—*i.e.*, they were not pledged as collateral against the Company's borrowing. *Id.* Indeed, Gianniotis has advanced and is likely to advance arguments that he too was misled and that his reliance on others was reasonable under the circumstances. In addition, Gianniotis would also likely to argue that much of Lead Plaintiff's evidence is inadmissible or otherwise relies on documents and witnesses that lack credibility. *Id.*

Melissanidis has claimed, *inter alia*, that he did not use material, non-public information about Aegean in transacting in Aegean stock and that putative class members did not trade contemporaneously with, or in the same securities, as Melissanidis. *See*, *e.g.*, ECF No. 303 at 4th, 5th, and 7th Affirm. Defenses. Melissanidis is also likely to argue that the most damning of Lead Plaintiff's evidence cited in Aegean's outside counsel's presentation to the government is inadmissible hearsay, and that Lead Plaintiff cannot show that he owned, controlled or otherwise had any influence over Aegean or the various counterparts that allegedly benefitted from the misappropriation. Lavallee Decl. ¶77. Melissanidis has also argued that he relinquished control and stepped away a management role at Aegean in 2006 and that the Company's public statements implicating him in the fraud represent nothing more than blame shifting for years of internal mismanagement. *See*, *e.g.*, ECF No. 200 at 4-5. Melissanidis also opposed class certification, arguing that Lead Plaintiff's proposed Class definition is far too broad to be certified, that much of the proposed Class would not have standing under the recent Supreme Court case *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021), and that determining each claimant's standing and damages would require a claimant-by-claimant inquiry. *See*, *e.g.*, *id.* at 6-16. As to Lead Plaintiff's allegations that he committed a primary act in violation of the Securities and Exchange Act of 1934, Melissanidis has argued that Lead Plaintiff will be unable to show that he was responsible for any of the misstatements made in Aegean's SEC filings, that Lead Plaintiff has no evidence showing the market relied on his alleged wrongdoing and that Lead Plaintiff cannot point to evidence showing that he controlled or had influence over Aegean and/or the individuals and entities who allegedly obtained misappropriated Company cash and assets. Lavallee Decl. ¶75.

Thus, while Lead Plaintiff and Lead Counsel believe that the claims asserted against the

Individual Defendants have merit, they recognize the particularly heightened risks and challenges to establishing liability against them.

**Liability Hurdles Related to Litigation Involving a Bankrupt Entity Against Foreign Defendants.**  Lead Plaintiff and Lead Counsel also considered the difficulties in establishing liability against foreign nationals and the substantial risks, burdens and expenses involved in further litigation of this Action, including challenges (a) continuing to gather documentary evidence, much of which would have been written in Greek and located foreign countries where the Litigation Trustee has instituted proceedings and/or where Aegean-related witnesses and entities are believed to be domiciled; (b) establishing the admissibility of documents given that Aegean filed for bankruptcy protection and witnesses and documents are overseas; (c) due to the fact that the Individual Defendants and others are likely to refuse to produce certain documents by asserting privileges under the GDPR; (d) regarding the costly and time-consuming work of translating relevant documents obtained in discovery and locating, subpoenaing, interviewing and/or deposing former Aegean employees and other key witnesses abroad, including through the Hague Convention; and (e) regarding the difficulty of collecting and/or enforcing any judgment obtained against foreign defendants.  Lavallee Decl. ¶78. Thus, the foreign nature of these proceedings that involved a bankrupt entity raises an additional level of risk not usually confronted in securities litigation with U.S.-based companies and defendants.  As such, these factors are an additional weight on the scale in favor of approval of the instant motion.  *Lea*, 2021 WL 5578665, at *9 (litigation involving foreign defendants among factors weighing in favor of settlement where "settlement [brought] to a close litigation that could have lasted several more years and costs hundreds of thousands of dollars in attorneys' fees and expenses"); *Gilat*, 2007 WL 2743675, at *10 (adding to the complexity and weighing in favor of settlement was fact that defendant and companies with which defendant did business under allegedly fraudulent scheme were located overseas); *In re Indep. Energy Holdings PLC, Inc.*, No. 00-CIV-6689 (SAS), 2003 WL 22244676, at *8 n.19 (S.D.N.Y. Sept. 29, 2003) (serious contingency risk because defendant was a foreign company in receivership at outset of litigation); *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (adding to complexity and uncertainty was the fact

that the defendant was a foreign company); *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 (DLI)(VVP), 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient."); *see also* Lavallee Decl. ¶78.

**Other Liability Hurdles Inherent In Complex Securities Class Actions.**  Lead Plaintiff and Lead Counsel also considered other risks of litigating a complex securities class action, including (a) the possibility that a class may not be certified; (b) a possible adverse judgment; (c) discovery disputes; (d) disputes between experts on complex financial and accounting/auditing matters as well as loss causation and damages; (e) a lengthy trial; and (f) appeals.  Lavallee Decl. ¶79.  In evaluating the settlement of securities class actions, courts repeatedly recognize that such litigation is complex, uncertain and costly.  *Oasmia Pharm.*, 2021 WL 1259559, at *5.

**Risks Involved with Expert Testimony.**  The presentation of complex and lengthy expert testimony regarding accounting and auditing issues and loss causation to the jury would also inevitably raise uncertainties and unpredictable outcomes.  *See*, *e.g.*, *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *18 (S.D.N.Y. Nov. 8, 2010) ("The jury's verdict … would … depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable."); *Maley*, 186 F. Supp. 2d at 365 (there was a risk that a "jury could be swayed by experts for the Defendants"); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants").

### (2)    The Risks of Establishing Damages

Proof of damages is a complex matter that requires expert testimony and can be fraught with risk.  Each of the defendants have and will no doubt continue to challenge Lead Plaintiff's damages methodology and argue, among other things, that any damages were caused by factors other than their alleged misconduct and thus, are not recoverable.

Indeed, Melissanidis disputes that the Settlement Class suffered any damages and that even if

they did, the amount of such damages related to his alleged insider trading are negligible. *See, e.g.*, ECF No. 420 at 3, 7. As noted, Gianniotis argues that he did not proximately cause or contribute to any damages and that any damages incurred were caused by intervening acts of others. *See*, *e.g.*, Answer, ECF No. 304 at ¶248 & 7th, 8th, 9th, 10th, and 12th Affirm. Defenses. In addition, the Individual Defendants would also likely argue that any judgment obtained at trial against them must be reduced pursuant to the proportional liability provisions of the federal securities laws. Lavallee Decl. ¶80. *See* 15 U.S.C. § 78u-4(f)(2)(B). If successful, these defenses could substantially reduce any recovery against the Individual Defendants.

Moreover, resolution of these damages issues would inevitably have involved various "battles of the experts," with the concomitant risk that the jury could credit the Individual Defendants' experts over Lead Plaintiff's experts. *See Signet Jewelers*, 2020 WL 4196468, at *11 (noting the impossibility of predicting how a jury would respond to the parties' experts and that acceptance of the defendants' expert opinion could have eliminated or reduced damages "to no more than $130 million, substantially less than the Settlement."); Lavallee Decl. ¶79. Courts have recognized that when parties will likely rely on significant expert testimony and analysis, including as to damages, settlement is favored. *See Park v. The Thompson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008). Given the foregoing, particularly when compared to the risk that the claims asserted in the Complaint would produce a similar, smaller or no recovery after summary judgment, trial and appeals, possibly years in the future, against these Individual Defendants, Lead Plaintiff and Lead Counsel believe that the proposed Individual Defendants Settlements are fair, reasonable and adequate, and in the best interests of the Settlement Class. Lavallee Decl. ¶¶11, 15, 74, 84; Lead Plaintiff Decl. ¶7.

      **e)**        **Factor 6—The Risk of Maintaining The Action As A Class Action Through Trial Favors Final Approval**

This factor, which also overlaps with Factor C of the Amended Rule 23(e)(2) factors, weighs in favor of final approval. While Lead Plaintiff believes that it will prevail in moving for class certification, this nonetheless remains a risk that weighs in favor of settlement. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 104 (D.N.J. 2018).

In connection with class certification, Lead Plaintiff submitted extensive briefing, documentary evidence, deposition testimony and an expert report and declaration opining that Aegean Securities traded in an efficient market during the Settlement Class Period, thus supporting the presumption of reliance and, hence, predominance.   Had Lead Plaintiff and Gianniotis not reached a settlement agreement during class certification briefing, Lead Plaintiff would have doubtlessly been forced to defend attacks to its expert's opinion on two fronts, while also having to research, depose and craft arguments cutting against any opinions offered by an expert retained by Gianniotis.   Moreover, Melissanidis opposed class certification.   Thus, in the present case, where "the Class had yet to be certified and there is no guarantee of success . . . the risks favor settlement." *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *20 (D.N.J. Nov. 15, 2016).   In addition, even post-certification, there is also a risk of decertification. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 413 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (risk of decertification weighed in favor of final approval).   The Individual Defendants Settlements dispense with this uncertainty.

### f)      Factor 7—The Individual Defendants' Ability To Withstand A Greater Judgment Favor Final Approval

Lead Plaintiffs have no evidence that Gianniotis, an individual, would be able to withstand a greater judgment than the amount paid to resolve his claims—$11 million.   Moreover, there were challenges to coverage by some insurers and there are no assurances that the limited available insurance would not be exhausted if this litigation continued through trial, particularly given that there have been some government investigations in this matter. Lavallee Decl. ¶78.   Similarly, Lead Plaintiff has no assurances that Melissanidis would not be judgment proof.   In addition, success at trial could entail further complex proceedings to enforce a U.S. judgment in Greece since these Individual Defendants are residents of Greece. *See* Lavallee Decl. ¶¶7, 77-78.

In any event, even assuming that either of the Individual Defendants would be able to withstand a higher judgment than the amount of the Individual Defendants Settlements and Lead Plaintiff could collect upon a judgment, this factor is generally not determinative when other factors weigh in favor

of approval, as they do here.  *Shapiro*, 2014 WL 1224666, at *11 ("[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate." (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013) ("[W]hile the defendants' ability to pay more suggests a settlement might be unfair, this factor, standing alone, does not suggest that the settlement is unfair.").  Thus, on balance, this factor weighs in favor of settlement.

### g)   Factors 8 And 9—The Range of Reasonableness of the Settlement Funds In Light of The Best Possible Recovery and All The Attendant Risks of Litigation Supports Final Approval

The last two *Grinnell* factors require that courts consider the range of reasonableness of the settlement fund in light of (i) the best possible recovery; and (ii) litigation risks.  *Grinnell*, 495 F.2d at 463.  The question for the Court is not whether the settlements represent the best possible recovery, but how the settlements relate to the strengths and weaknesses of the case.  In making this assessment, the court must "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *Id.* at 462.  Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum."  *PaineWebber*, 171 F.R.D. at 130.  Rather, "in any case there is a range of reasonableness with respect to a settlement."  *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the $11,949,999, together with the previously approved Auditor Settlements (*see* ECF Nos. 402 and 404), brings the damages recovered for the Settlement Class to approximately $41.7 million or, 11.9%, of maximum Section 10(b) damages.  Lavallee Decl. ¶85.  This is well within—and indeed above—the reported average values for securities fraud class actions.  For example, Cornerstone Research's data shows that the median settlement as a percentage of damages in cases involving accounting issues (including GAAP violations, restatements and accounting irregularities) between 2013 and 2022 was between 5.1% and 7.6%.  *See* Lavallee Decl. ¶85 & Ex. 7 at 9.  Cornerstone Research also estimates that median settlements as a percentage of "simplified tiered damages" in Rule 10b-5 cases since 2013 have ranged between 4.1% and 4.3% for cases with

estimated damages of between $250 million to $499 million (*id*. at 6) and that the median settlement dollars for all securities fraud cases from 2018 to 2022 following rulings on motions to dismiss and the filing of a class certification motion, but before a ruling on class certification, is $17 million (*id*. at 14). Moreover, the Second Circuit's median recovery over the period of 2013 to 2022 is 5.0% of damages according to the same report.  *Id*. at 19.  Further, given the likelihood that not all Settlement Class Members will file claims, it is likely that Authorized Claimants' actual percentage of recovery will be even higher.

In sum, there are significant uncertainties and risks in continuing this litigation that lean in favor of approving the Individual Defendants Settlements.  In light of these risks and uncertainties, the $11,949,999 cash recovery now, bringing the total recovery $41,749,999, weighs in favor of final approval of the Individual Defendants Settlements.

### 3. Application of The Remaining Requirements of Amended Rule 23(e)(2) Supports Final Approval

#### a) Factor A—Lead Plaintiff and Lead Counsel Have Adequately Represented The Settlement Class

As explained above, Lead Plaintiff and Lead Counsel have represented the Settlement Class's interests with great care and perseverance.  Lead Counsel exhausted considerable resources investigating the claims and defenses at issue, culling through SEC filings, articles, analysts' reports, filings in domestic and foreign litigation, briefing motions and oppositions to motions to dismiss, consultations with Greek counsel, preparing Lead Plaintiff's motions for class certification, defending the deposition of its class certification expert and engaging in substantial discovery.  Lavallee Decl. ¶¶8, 10, 43-51, 58-73, 104.  With the able assistance of Bankruptcy Counsel, Lead Counsel and Lead Plaintiff also protected the interests of the Settlement Class Members in the Aegean Bankruptcy. Lavallee Decl. ¶¶30-35.  In addition, Lead Plaintiff provided substantial assistance to Lead Counsel throughout the Action, including with respect to investigation, litigation strategy and settlement negotiations, and searching for and producing responsive documents.  *See* Lavallee Decl. ¶121; Lead Plaintiff Decl. ¶¶4-5.  This factor favors final approval.

18

>           **b)**     **Factor B—The Individual Defendants Settlements Were Reached**
>                      **After Arm's-Length Negotiations Between Experienced**
>                      **Securities Litigators and Are Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached as a result of arm's-length negotiations between experienced counsel. *See Shapiro* 2014 WL 1224666 at *7 ("A class action settlement is entitled to a presumption of fairness when it is the product of extensive arm's-length negotiations."); *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) (same).

Lead Counsel, Berman Tabacco, has decades of experience litigating securities class actions, is intimately familiar with the facts in the case and has extensive experience prosecuting comparable securities class actions. *See* Lavallee Decl. ¶¶104-105 & Ex. 4. The Individual Defendants were similarly well-represented by nationally recognized counsel with deep experience in securities class action suits. *Id.* ¶71.

Further, the Individual Defendants Settlements were reached following extensive arm's-length negotiations. The Gianniotis Settlement was reached after two separate full-day mediation sessions before Michelle Yoshida, a nationally recognized mediator experienced in mediating PSLRA actions, as well as telephonic negotiations between the parties over the course of eight months. *See* Lavallee Decl. ¶¶10, 65-68. The Melissanidis Settlement was likewise only reached after extensive arm's-length negotiations, through the mediation sessions before Ms. Yoshida, several informal efforts to resolve the case, several telephonic negotiations overseen by Magistrate Judge Stewart D. Aaron and a settlement conference before Judge Aaron, which culminated in the acceptance of a mediator's proposal by Judge Aaron. Lavallee Decl. ¶¶10, 65-70. Accordingly, the settlements were the result of arm's-length negotiations between experienced counsel well-versed in the strengths and weaknesses of the claims. *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation."); *Oasmia Pharm.*, 2021 WL 1259559, at *5 (same).

Moreover, these settlements are "entitled to an even greater presumption of reasonableness"

because they were achieved "under the supervision and with the endorsement of a sophisticated institutional investor." *Signet Jewelers*, 2020 WL 4196468, at *4 (citing *Veeco*, 2007 WL 4115809, at *5) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."). Lead Plaintiff devoted significant time overseeing this litigation, consulted with Lead Counsel on all significant issues, attended both mediations and the settlement conference and was therefore well informed and familiar with the risks and challenges of continued prosecution of this case when it approved the Individual Defendants Settlements. Lavallee Decl. ¶¶120-122; Lead Plaintiff Decl. ¶¶5-7. Lead Plaintiff believes these settlements provide an immediate and substantial benefit to Settlement Class Members. Lavallee Decl. ¶84; Lead Plaintiff Decl. ¶7.

### c) Factor C—The Relief Provided For The Settlement Class Is Adequate Taking Into Account All Factors

This factor overlaps with the first, fourth, fifth and sixth *Grinnell* factors. The Individual Defendants Settlements are beneficial in the context of the costs, risks and delays associated with continued litigation. As shown above, compared to the many risks of continued litigation against the Individual Defendants, the Individual Defendants Settlements provide for an immediate cash payment of $11,949,999, which, on balance, is an excellent recovery for the Settlement Class.

Moreover, for the reasons provided below (*see infra* Section III.B. & III.C.) and in the A.B. Data Declaration, at ¶¶2-14 & Exs. A-D, both the method of distributing relief to the Settlement Class and the method of processing Settlement Class Member claims are fair and reasonable. In addition, for the reasons provided in the accompanying Fee and Expense Application, the terms of Lead Counsel's proposed award of attorneys' fees are in accordance with those in comparable securities class action cases and are likewise fair and reasonable. It is also reasonable to award counsel its fees for these settlements given that they provide that the Individual Defendants Settlement Funds will be distributed to the Settlement Class upon final approval and claims administration. *See, e.g., Athale v. Sinotech Energy Ltd.*, No. 11 Civ. 05831 (AJN), 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (approving attorneys' fees for settlement); Order Granting Class Counsel's Mot. for Award of

Attorneys' Fees, *Laydon v. Mizuho Bank, Ltd. et al*., No. 1:12-cv-03419-GBD-SLC (S.D.N.Y. Nov. 10, 2016), ECF No. 723 (same); Mem. and Order, *In Re: Libor-Based Fin. Instruments Antitrust Litig.*, No. 1:11-md-02262-NRB (S.D.N.Y. Aug. 14, 2018), ECF No. 2683 (same).

Amended Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the [settlement] proposal," and amended Rule 23(e)(2)(C)(iv) provides for the disclosure of any such agreement.  The Settling Parties have entered into standard supplemental agreements, which permit the Individual Defendants to terminate their respective Settlements if Settlement Class Members representing a certain threshold of Aegean Securities opt out from the Individual Defendants Settlement(s).  Gianniotis Stipulation ¶13.1 (ECF No. 438-1); Melissanidis Stipulation ¶13.1 (ECF No. 438-2).  Moreover, as noted above, to date, there have been no objections to any aspect of the Individual Defendants Settlements.  A.B. Data Decl. ¶¶15-18 & Ex. E.

### d)       Factor D—The Proposed Methods of Distributing The Individual Defendants Settlements To Settlement Class Members Are Fair And Reasonable

The proposed methods of distributing the Individual Defendants Settlements to Settlement Class Members, as set forth in the Individual Defendants Plan of Allocation, treat Settlement Class Members equitably, and are fair and reasonable for the reasons provided below (*see infra* Section III.B.).

Based on the foregoing, and taken as a whole, consideration of the *Grinnell* and Rule 23 factors supports a finding that the Individual Defendants Settlements are fair, reasonable and adequate.  Accordingly, Lead Counsel respectfully requests that the Court grant final approval.

### B.       The Individual Defendants Plan of Allocation is Fair And Reasonable

A "plan of allocation is subject to the same test of fairness, reasonableness, and adequacy as the settlement itself."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 157-58 (S.D.N.Y. 2013).  In determining the reasonableness and fairness of a plan of allocation, "courts look primarily to the opinion of counsel."  *Facebook*, 343 F. Supp. 3d at 414 (quoting *In re Giant Interactive Grp., Inc. Sec.*

*Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011)).  "[I]f recommended by experienced and competent class counsel," the allocation plan "need only have a reasonable, rational basis."  *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

Generally, a plan of allocation that calls for the *pro rata* distribution of settlement proceeds based on investment loss is presumptively reasonable.  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008).  Here, the proposed Individual Defendants Plan of Allocation, which was developed with the assistance of a damages consultant, provides a fair and reasonable method to distribute each Individual Defendants Net Settlement Funds to Authorized Claimants on a *pro rata* basis, based on the relative size of their recognized claims and taking into account when they purchased, acquired and/or sold Aegean Securities.  *See* Lavallee Decl. ¶¶12, 86-89.  Moreover, the Individual Defendants Plan of Allocation is the same as the one approved by the Court for the Deloitte Greece Settlement.  Lavallee Decl. ¶90. The Individual Defendants Plan of Allocation was referenced as available at www.AegeanSecuritiesLitigation.com in the Detailed Notice.  To date, there have been no objections to the Individual Defendants Plan of Allocation.  *See* Lavallee Decl. ¶¶14, 101, 125; A.B. Data Decl. ¶15-16.

The Individual Defendants Plan of Allocation should be approved as it ensures that the Individual Defendants Net Settlement Funds will be fairly and equitably distributed.

### C.   Notice To The Settlement Class Satisfied Rule 23, The PSLRA and Due Process and Was Reasonable

In accordance with the Court's Preliminary Approval Orders, beginning on June 1, 2023, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator"), caused a total of 40,676 Postcard Notices and Detailed Notices to be mailed by first-class mail to potential Settlement Class Members and their nominees who were previously identified in connection with the Auditors Settlements[7] and re-mailed 115 Postcard Notices to persons whose original mailings

---

[7] Courts in this and other districts have held that postcard notice is sufficient if it contains basic settlement information and instructions for settlement class members to access the detailed long notice on the settlement website.  *See, e.g.*, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014).

were returned by the U.S. Postal Service ("USPS") and for whom updated addressed were provided to A.B. Data by the USPS.  A.B. Data Decl. ¶¶6, 11 & Exs. A & B.  A.B. Data also caused the Detailed Notice to be disseminated via electronic mail where viable email addresses were known, or otherwise via first-class mail to its proprietary database containing names and addresses of the largest and most common banks, brokers and other nominees.  *Id.* ¶7 & Ex. B.  This database permits the identification of beneficial owners whose securities were purchased and held by brokerage firms, banks, institutions and other third-party nominees in the name of the respective nominees, on behalf of the beneficial owners.  *Id.* ¶3 & n3.  As of September 14, 2023, A.B. Data had received 8,738 additional names and addresses of potential Settlement Class Members from individuals or brokerage firms and other nominee holders in connection with the Individual Defendants Settlements Notice Program and requests for 841 Detailed Notices to be forwarded by the nominees to their customers.  *Id.* ¶¶8, 10.  All requests were, and will continue to be, complied with and addressed by A.B. Data in a timely manner. *Id.*  A.B. Data also caused the Depository Trust Company to post the Notice Packet on its Electronic Legal Notice System.  *Id.* ¶9.

In addition, on June 19, 2023, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire.*  A.B. Data Decl. ¶12 & Exs. C-D.  In coordination with Lead Counsel, A.B. Data has also continued to maintain a settlement website, which is accessible 24 hours a day, 7 days a week, where Settlement Class Members can access the Postcard Notice, Detailed Notice, Claim Form, the settlement stipulations, court filings and other relevant information about the Individual Defendants Settlements and all critical Court-imposed deadlines.  *Id.* ¶14.  A.B. Data has also continued to maintain a case-specific, toll-free helpline with an interactive voice response system and live operators, to accommodate potential Settlement Class Members with questions about the Action and the Individual Defendants Settlements.  *Id.* ¶13.

This combination of individual first-class mailed notice to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in a widely circulated publication, transmitted over a newswire and set forth on an internet website, is "the best notice … practicable under the circumstances, " thereby satisfying the due process requirements of Rule 23(c)(2)(B).  *Eisen*

*v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Indeed, notice to the Settlement Class Members satisfies Rule 23(e)(1) because it was provided in a "reasonable manner—*i.e.*, it "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).   The Court-approved Detailed Notice includes all the information required by Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) the consideration provided; (ii) a description of the amount of the Individual Defendants Settlements proposed to be distributed to the parties to the Action, determined in the aggregate and on an average per share basis; (iii) a statement of the potential outcome of the case, including that the Settling Parties disagree as to the amount of damages and a statement of Lead Plaintiff's estimated average amount of recovery per share; (iv) a statement of attorneys' fees or costs sought; (v) identification and contact information for Lead Counsel; (vi) a description of the reasons for the Individual Defendants Settlements; (vii) an explanation of the rights of Settlement Class Members to participate in these settlements, object to any aspect of these settlements, the Individual Defendants Plan of Allocation and/or the Fee and Expense Application, or exclude themselves from these settlements; (viii) the dates and deadlines for certain Individual Defendants Settlements-related events; (ix) a reference to the Individual Defendants Plan of Allocation posted at www.AegeanSecuritiesLitigation.com and the rational for the Individual Defendants Plan of Allocation; (x) an explanation how to submit Claim Forms, object or opt out of these settlements and the timing needed to do so; and (xi) a statement that the Claims Administrator will maintain a toll-free number to answer questions as well as maintain a website where, among other things, key pleadings in this case may be viewed.   *See* A.B. Data Decl. Ex. B; *see also* Lavallee Decl. ¶¶91-101.   The Detailed Notice informed recipients that Lead Counsel intended to apply for an award of attorneys' fees not to exceed twenty-five percent (25%) of the Individual Defendants Settlement Amount and for reimbursement of Lead Counsel's out-of-pocket expenses not reimbursed from the Auditor Settlements not to exceed $120,000.   *Id.*

### D.  Class Certification Remains Appropriate

In its Preliminary Approval Orders, the Court (i) conditionally certified the Settlement Class so that notice could be issued and (ii) appointed Lead Plaintiff and Lead Counsel as class representative and class counsel, respectively.  ECF Nos. 446-47.  Moreover, in its Orders and Final Judgments for the Auditor Settlements, the Court certified, for settlement purposes, the same Settlement Class Lead Plaintiff seeks to certify here.  ECF Nos. 402 & 404.  Thus, in the interest of judicial economy, Lead Plaintiff refers the Court to its prior orders and Lead Plaintiff's moving papers filed in support of the Auditor Settlements for a detailed account of the arguments supporting certification of the Settlement Class.  ECF Nos. 371-72, 375, 402 and 404.

Nothing has changed to alter the propriety of the Court's orders regarding certification of a Settlement Class and, for the reasons stated in the Lead Plaintiff's memorandum of law in support of its motion for preliminary approval of the proposed Individual Defendants Settlements (ECF No. 437), Lead Plaintiff submits that the Court (i) finally certify the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appoint Lead Plaintiff as Settlement Class Representative; and (iii) appoint Lead Counsel as Settlement Class Counsel.

## IV.  <u>CONCLUSION</u>

For these reasons, Lead Plaintiff respectfully requests that the Court approve the Individual Defendants Settlements and Plan of Allocation and certify the Settlement Class.

//

//

//

Dated:  September 14, 2023

Respectfully submitted,

**BERMAN TABACCO**

By:   */s/ Nicole Lavallee*
       Nicole Lavallee (admitted *pro hac vice*)

Joseph J. Tabacco, Jr. (JT1994)
Christopher T. Heffelfinger (admitted *pro hac vice*)
Kristin Moody (admitted *pro hac vice*)
Jeffrey Rocha (admitted *pro hac vice*)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  jtabacco@bermantabacco.com
      nlavallee@bermantabacco.com
      cheffelfinger@bermantabacco.com
      kmoody@bermantabacco.com
      jrocha@bermantabacco.com

*Counsel for Lead Plaintiff Utah Retirement Systems*